No. 22,387.

JOHN HOOD, *Appellee,* v. THE AMERICAN REFRIGERATOR TRANSIT COMPANY, *Appellant.*

### SYLLABUS BY THE COURT.

WORKMEN'S COMPENSATION ACT—*Partial Incapacity—Minimum Compensation.* In an action by a workman to recover compensation under the Laws of 1911, ch. 218; Laws of 1913, ch. 216, where there was evidence tending to show that as a result of the injury plaintiff was less able to perform his work as a car repairer, and the jury made a finding that he was partially incapacitated, and awarded him the minimum compensation of $3 a week for the period which they found his partial incapacity would probably continue, *held,* the defendant was not entitled to judgment on the special findings, although the findings show that within a few months after plaintiff received his injury he obtained employment elsewhere in the same kind of work, and had been earning almost double the amount of his average earnings at the time of his injury.

Appeal from Wyandotte district court, division No. 2; FRANK D. HUTCHINGS, judge. Opinion filed January 10, 1920. Affirmed.

*W. P. Waggener*, and *J. M. Challis*, both of Atchison, for the appellant.

*W. W. McCanles, Charles E. Thompson*, and *H. F. Gorsuch*, all of Kansas City, for the appellee.

The opinion of the court was delivered by

PORTER, J.: In an action under the workmen's compensation law the plaintiff recovered judgment for $480, which included $36 for six weeks of total incapacity, and the minimum amount of $3 per week for 148 weeks, the period during which the jury found he would be partially incapacitated. At the time he was injured plaintiff was employed as a car repairer working for the defendant in repairing and reconstructing refrigerator cars. His injury was to the left hand, the third finger being broken near the second joint. There was evidence tending to show that as result of the injury the joint became somewhat stiff, so that plaintiff was not able to hold nails in his left hand or to perform his usual and customary work as a carpenter or car repairer. At the time he was injured he was earning $16.50 per week.

With their verdict the jury returned answers to a number of special questions. They found that plaintiff was injured on April 26, 1917, and that on June 20, following, he started to work for a railroad company in the capacity of a car repairer, and that since that time he had performed substantially the same kind of work for the railroad company that he was performing for the defendant at the time of his injury, and that his average earnings since June 20, 1917, amount to $30 per week.

The defendant's motion for judgment on the special findings, notwithstanding the general verdict, was overruled, and defendant brings the case here for review.

The appeal raises but one question. It is said that the spirit of the workmen's compensation act of 1911, as amended in 1913, compels a judgment in defendant's favor. The contention is, that the compensation acts were passed for the sole

purpose of making good the impaired earning power of an injured workman so long as the workman suffers under the disability; that the findings and evidence show a very ordinary and trivial injury, and show further that at the end of eight weeks after the injury plaintiff was a better workman than he had been theretofore, as indicated by his increased earnings. The fact that the plaintiff went to work for an employer with whom he was in no way involved, and against whom he had no claim, it is said, shows that he secured and retained employment on the basis of his own worth and capacity. It is insisted, too, that "the capacity to labor is to be determined by the earnings of the laborer," and that the increased earnings of plaintiff in the identical kind of employment disproved the possibility that he suffered any incapacity.

While our compensation law proceeds upon the theory that usually the capacity of a workman to perform labor bears a close relation to his earnings when employed, we do not think his capacity in this respect is to be determined solely by the amount of his earnings. The question is affected by the demand for and supply of the particular kind of labor, as well as by the cost of living and of commodities generally; these matters and the price commonly paid at a given time or place for skilled and unskilled labor are factors which enter into the question. Everyone knows that within the past four or five years, wages of all kinds have constantly advanced and in many kinds of employment have more than doubled. The defendant says:

"The employer is as well entitled to the benefactions of nature as the employee. If the injury was trivial and readily healed, and the earning capacity of the injured workman was in no way impaired, this is a circumstance, a benefaction of fortune which should redound to the benefit of the employer as well as the employee."

Whether this be true or not, the injured workman is entitled to all the benefactions that come by reason of any advance in wages paid for the same kind of employment.

We regard the question, however, as controlled by the statute which provides that—

"In the case of partial incapacity the payments shall be computed to equal, as closely as possible, fifty per cent of the difference between the amount of the 'average earnings' of the workman before the accident, to be computed as herein provided, and the average amount which he is most

probably able to earn in some suitable employment or business after the accident, subject however, to the limitations hereinbefore provided." (Laws 1911, ch. 218, § 12.)

The limitation as applied to the present case is found in section 11 of the same chapter, which fixes the minimum compensation for partial incapacity as follows: "but in no case less than three dollars per week."

In *Dennis v. Cafferty*, 99 Kan. 810, 163 Pac. 461, the court found that the injured workman's average earnings at the time of the injury were $13.50; that his probable weekly earnings would be $12 a week, and allowed him the $3 minimum per week for the total period of his incapacity. Sixteen months after his injury, he had secured work in a rolling mill as an overseer, not doing manual labor, for which he was paid $6 per day, or $36 a week. It was contended by the defendant that upon the undisputed facts the workman's incapacity to earn wages had wholly and totally ceased, and that to allow him any compensation therefor was to place an unjustifiable burden upon the industry, contrary to the spirit and purpose of the compensation act.

It was held, however, that the minimum of $3 a week for partial disability was fixed by the legislature with a general view of compensation, and was not to be withheld merely because, in a given case, before the expiration of the period the workman had found other employment and was earning more wages than before the injury.

There is no way of distinguishing that case from this, except the fact that here the workman found the identical kind of employment, for which he received almost double the amount of wages he had been receiving at the time of his injury. In the opinion in the case just cited, it was said that—

"A minimum of three dollars a week was prescribed, not because it would in each case be in accord with precise justice, but because as a general thing this was deemed a fair lower rung for the ladder of allowances." (p. 813.)

Since there was evidence to sustain the finding of partial incapacity, the plaintiff cannot be deprived of his right to the minimum compensation fixed by the statute, merely because such incapacity is slight. The fact that he has obtained employment from another employer in the same kind of work,

and has been able to earn a great deal more than his average earnings at the time he received the injury, must be regarded as accounted for by unusual conditions, of which the courts will not decline to take notice, and which have resulted in a general increase in the wages paid to laborers.

The judgment is affirmed.