No. 20,865.

THOMAS E. DENNIS, *Appellee,* v. W. H. CAFFERTY et al., Partners, etc., *Appellants.*

SYLLABUS BY THE COURT.

1. WORKMEN'S COMPENSATION ACT — *Injuries — Findings — "Weekly Earnings."* An erroneous finding as to probable weekly earnings, under the facts, worked no prejudice.

2. SAME—*Minimum Compensation—Partial Incapacity.* The minimum of three dollars a week for partial disability is a sum fixed by the legislature with the general view and purpose of compensation, and is not to be withheld merely because in a given case before the expiration of the period of partial incapacity the workman has found other employment and is earning more wages than before the injury.

Appeal from Wyandotte district court, division No. 3; WILLIAM H. McCAMISH, judge. Opinion filed February 10, 1917. Affirmed.

*Adrian F. Sherman,* of Topeka, *E. S. McAnany, M. L. Alden,* both of Kansas City, and *Thad B. Landon,* of Kansas City, Mo., for the appellants.

*Arthur J. Stanley,* and *Guy E. Stanley,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

WEST, J.: The defendants appeal from a judgment rendered under the workmen's compensation act, and complains of the trial court's findings touching the plaintiff's total and partial disability, his probable earnings, and the amounts he is entitled to recover for total and partial incapacities, also the refusal of a new trial.

The plaintiff was injured on November 28, 1914. He was engaged in loading cars with sand, moving them with a pinch bar, and while tightening a brake on top of a car received an injury to his hand. A soft splint was applied, and afterwards a steel splint which was worn eight weeks, and thereafter a leather strap. The court found that his average earnings at the time of injury were $13.50 a week, that his probable weekly earnings would be $12 a week, his total disability

forty-two weeks, and his partial incapacity thereafter eighty weeks; that he was entitled to recover one-half his average weekly earnings prior to the injury, $6.75, during his total disability, making $270, and $3 a week for partial disability for eighty weeks, $240. After giving the defendants credit for the amount already paid plaintiff, he was given a judgment for $420.40.

We discern no error in the findings relating to the periods of total and partial disability as there was evidence to justify these findings.

As to the amount of his probable weekly earnings, $12 a week, it is claimed that this finding is contrary to the evidence. The plaintiff testified that he had a boy's job at Peet Brothers, about three months, averaging $10.50 a week. After that he ran a power punch for the same firm and made frames for small steel trucks, a task which favored his injured hand, and for this his wages averaged about $12 a week until about three weeks before he resigned on March 28, 1916, when they were increased to $16.50 a week; that while doing this work his wages were increased, but it was not heavy work. About March 31, 1916, he secured work in a roller mill as an overseer, not doing manual labor, a job paying about $6 a day, six days in the week; that his present $6-a-day position was temporary, but he expected to be transferred to another place at the same work. His own evidence, therefore, was to the effect that up to March 11, 1916, he was earning $12 a week, then for a few days $16.50, and after taking the position in the roller mill $36 a week, which covered the time from April 3 to May 23, 1916, to which position he testified he was to return after the trial. As it appears beyond question that long before the expiration of the eighty-week period the plaintiff was in fact earning much higher wages than when he was injured, it is impossible to see how the evidence justifies the finding complained of.

He complained that down to the time of the trial his right wrist pained him at times, that the movement was not as good as in his left wrist, and that it was not as strong as before the injury and there was a curvature or a bump on the second finger; he could not begin to do the work then that he used to do as an iron worker—his arm would not stand it. He

quit the employment of Peet Brothers the 29th of March, voluntarily, because he had a position offered him where there was no manual labor attached.

The statute provides that—

"In the case of partial incapacity the payments shall be computed to equal, as closely as possible, fifty per cent of the difference between the amount of the 'average earnings' of the workman before the accident, to be computed as herein provided, and the average amount which he is most probably able to earn in some suitable employment or business after the accident, subject, however, to the limitations hereinbefore provided." (Laws 1911, ch. 218, § 12, Gen. Stat. 1915, § 5906.)

The allowance and $3 a week because of partial disability for the period of eighty weeks is attacked as against the evidence showing actual increased earnings. It is said that under such circumstances the $3 allowance would not be compensation but a penalty—a departure from the spirit of the compensation act. Section 11, however, of the statute already referred to, as amended by section 5 of chapter 216 of the Laws of 1913 (Gen. Stat. 1915, § 5905), specifically provides that when partial incapacity for work results from injury periodical payments during such incapacity shall in no case be less than $3 a week. Section 1 of the act (Gen. Stat. 1915, § 5896) provides that the employer shall not be liable in respect to any injury "which does not disable the workman for a period of at least two weeks from earning full wages at the work at which he is employed." The evidence was sufficient to justify the conclusion that the plaintiff would continue for the time found to be partially incapacitated from doing the work he was engaged in when injured. Counsel put the situation before us clearly and strongly:

"We present here a record where under the evidence of the plaintiff himself, if he is allowed to recover under the findings of the court, his wages from Christmas of 1915 to March 11, 1916, would be increased $1.50, from March 11, 1916, to March 29, 1916, an increase of $3.00 a week, and from April 3, 1916, to May 23, 1916, and continuing, an 'increase of $25.50 a week. We say that assuming the findings of the court to be correct, the plaintiff, after the 29th of September, 1915, and up to Christmas of 1915, should receive but $1.50 a week. That from Christmas of 1915 to March 11, 1916, his payments should be but 75 cents a week. That from the 11th of March, 1916, he is not entitled to one penny, because under the facts his incapacity to earn wages wholly

and totally ceased, and to allow him anything thereafter is to unjustifiably burden the industry with the payments to which the plaintiff is not entitled."

In framing the present act the legislature was providing for payment on account of death or injury occurring in certain hazardous employments, with the general view of compensation at the ultimate expense of the public patronizing the industry in which the disaster occurred. Certain boundary lines must needs be fixed to make the act practicable. Instead of fifty per cent any other per cent could have been designated in case of total incapacity. A minimum of three dollars a week was prescribed, not because it would in each case be in accord with precise justice, but because as a general thing this was deemed a fair lower rung for the ladder of allowances. While aiming at a thing named compensation no way was found to avoid in every instance certain inequities or to provide in advance that judgments of courts might never turn out to be, in the light of subsequent developments, slightly excessive or slightly lacking in sufficiency. Although the method of settlement and adjustment should have been and was doubtless intended usually to be without resort to the courts, it seems to have been considered that in any case of partial incapacity the traffic, otherwise the public, could and should bear at least three dollars a week. While partially disabled, should a workman by some happy revolution of the wheel of fortune, by entering a profession or by obtaining a light but lucrative position, be placed beyond the need of the three-dollar allowance, no means has been provided for its detachment from the aggregate of his income. But this occasional plethora must be of comparatively short duration and no serious result can follow. The tendency to change occupations and better himself is characteristic of the American employee, and such advancement occurs more frequently here than in Europe where this class of legislation originated.

The error in the finding as to weekly earnings did not prejudice the defendant, for during the continuance of total disability it was without evil effect and thereafter without force.

The judgment is affirmed.