No. 22,988.

JOHN CHANCE, *Appellee*, v. THE RELIANCE COAL & MINING COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. MASTER AND SERVANT—*Accident in Coal Mine—Injury Arose in Course of Employment.* A workman engaged in mining coal in a strip pit quit his ordinary work at the end of the day and with other employees rode upon an engine towards the other end of the pit with a view of ascending to the surface, as was the custom in the mine, and while on his way the engine on which he was riding collided with cars which had been insecurely placed upon a switch line, and he suffered an injury. *Held,* that the accident arose out of and in the course of his employment and that he is entitled to compensation for the injury under the provisions of the workmen's compensation act.

2. SAME — *Judgment* — *Error in Computation* — *Corrected and Modified Upon Appeal.* An error in computation of the award made may be corrected and modified upon appeal without reversing the judgment.

3. SAME — *Finding of Partial Permanent Disability* — *Sustained by Evidence.* The fact that the injured workman has performed some labor since he was injured is held under the evidence to be no ground for overthrowing the finding of the court that the injury had resulted in partial permanent disability.

Appeal from Crawford district court; ARTHUR FULLER, judge *pro tem.* Opinion filed December 11, 1920. Modified.

*W. L. Wood,* of Kansas City, *A. B. Keller, George R. Malcolm,* and *John P. Curran,* all of Pittsburg, for the appellant.

*Phil H. Callery,* and *J. E. Callery,* both of Pittsburg, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is an appeal from a judgment award-ing compensation to the plaintiff for an accidental injury sus-tained by him while he was employed as a miner by the de-fendant.

The principal contention of the defendant is that the acci-dent to plaintiff did not arise out of and in the course of his employment. There is little room for contention on this point. Plaintiff was employed to work in a coal mine designated as a strip pit, which was an excavation about three-fourths of a mile in length, and varying from twenty to thirty feet in depth. He was helping operate a coal loader near the coal face at one end of the pit, and when the loader shut down for the day he and others mounted a dinkey engine that was used to pull loads to the tipple at the other end of the pit where the coal was hoisted to the surface. On the way some empty cars that were insecurely placed on a switch track ran down the grade and collided with the engine on which plaintiff was riding, in such a way as to cut off the heel of his left foot.

It is insisted by defendant that plaintiff had quit his work and was on his way home, using a means of travel of his own selection, and was not at the time performing any service growing out of or incidental to his employment. While he had ceased work at the coal loader he was still in the pit, the place of employment, and still under the direction and control of the defendant. It cannot be said he was outside of his employment when he was passing from one part of the pit to the other, riding on the engine, a common means of transportation in go-ing to the tipple, an appliance of the defendant for the purpose of ascending above ground. It was the usual custom of the miners "to ride out upon the last trip" upon the dinkey engines, and this was done with the acquiescence of the defendant. The injury which occurred on the trip was a result which was or should have been in contemplation of the defendant and which grew out of and was reasonably incident to plaintiff's em-ployment.

"It has been said that an injury which occurs while an employee is doing what he might reasonably do at the time and place is one which arises 'out of and in the course of the employment.'" (L. R. A. 1916 A, 232.)

This case is not to be likened to one where an employee is on the way going to or from the place of employment, where he can choose his own route and act independently of his employer. (*Bevard v. Coal Co.*, 101 Kan. 207, 165 Pac. 657; *Mazeffe v. Railway Co.*, 106 Kan. 796, 189 Pac. 917.) It falls rather within the rule of *Sedlock v. Mining Co.*, 98 Kan. 680, 159 Pac. 9. There a coal miner left his work at the coal face, laid aside his tools, changed his clothes and proceeded towards the shaft with the intention of ascending to the top of the mine. About 200 feet from the room where he had been at work, and about one-half mile from the shaft he came in contact with a piece of slate hanging from the roof of the mine, which destroyed one of his eyes. Against the contention that he was at the time outside of his employment, it was held that he was still in the mine and under obligation to observe the rules prescribed by the employer, and that it was incumbent on the employer to provide him not only with a safe place to work in the mine, but also a safe passageway out of it, as well as the means to carry him safely to the top of the mine. His duties to the employer, it was held, had not ended when he laid aside his pick and other tools, nor until he had left the mine. It was said:

"The workman was in the mine, under the direction and entitled to the protection of the defendant at the time of the accident. Each owed duties to the other and the relation of master and servant still existed between them when the injury was sustained, although the workman was not actually using the pick and shovel at that time." (p. 685.)

The facts in that case are quite similar to those of the instant case and the rule there applied is closely applicable here. (See the cases therein cited, and also, *Monson v. Battelle,* 102 Kan. 208, 170 Pac. 801; *Stuart v. Kansas City,* 102 Kan. 307, 171 Pac. 913; *White v. Stock Yards Co.,* 104 Kan. 90, 177 Pac. 522; *Benson v. Railway Co.,* 104 Kan. 198, 178 Pac. 747; *Thomas v. Manufacturing Co.,* 104 Kan. 432, 179 Pac. 372.) Under the authorities it is clear that within the meaning of the workmen's compensation law the injury of the plaintiff arose out of and in the course of his employment.

There is a further contention that the award of compensation was excessive. It is apparent that an error in computation was made by which the plaintiff was given $99 more than he was entitled to receive under the rule of the statute. The

case was tried by the court without a jury and it is manifest that the error is not one that requires a new trial. The judgment is reduced from $2,268 to $2,169, and interest should be reckoned on the latter amount from the day of the judgment.

It is also contended that the court was not warranted in allowing plaintiff compensation for partial permanent disability. There is sufficient evidence to sustain the finding of the court in that respect. The fact that plaintiff was able to and did perform some labor part of the time, of the same character as he had previously done, does not impair the validity of the finding of partial permanent disability. (*Gailey v. Manufacturing Co.*, 98 Kan. 53, 157 Pac. 431; *Dennis v. Cafferty*, 99 Kan. 810, 163 Pac. 461.)

The judgment as modified is affirmed.