No. 33,531

J. W. McGhee, *Appellee*, v. The Sinclair Refining Company, *Appellant*.

(73 P. 2d 39)

Opinion filed November 6, 1937.

*A. M. Etchen,* of Kansas City, *Walter E. Brown* and *C. L. Canfield,* both of Kansas City, Mo., for the appellant.

*H. S. Roberts* and *Leonard O. Thomas,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

Smith, J.: This is a workmen's compensation case. The commissioner of workmen's compensation found that the workman had a sixty percent partial permanent disability and awarded him compensation on that basis, but inasmuch as respondent had been and was paying claimant wages in excess of what he was receiving at the time of his injury the commissioner credited respondent with weekly payments on the permanent partial disability during the time respondent paid such wages. On appeal to the district court the award of the commissioner was sustained except that respondent was denied credit for previous payments on the permanent partial disability and was ordered to pay claimant the full amount of the compensation for such disability. Respondent appeals.

At the hearing before the commissioner it was stipulated that the claimant was an employee of respondent at the time of the injury; that they were governed by the workmen's compensation act and that claimant sustained an accidental injury arising out of and in the course of his employment. The parties also agree as to the rate of pay of claimant at his employment. The only question in the case was the nature and extent of the injury and the duration of disability.

Claimant was injured in a fall from a tank while putting on handrails on December 18, 1935. He was away from work until February 13, 1936. On that date he was started at the work he had been doing, could not do it and was put at lighter work, scraping and painting tanks. Between the time he returned to work and the hearing of his case before the commissioner his hourly rate of pay was twice increased. He was receiving a higher rate of pay at the time of his hearing than he was receiving when he was hurt.

The commissioner found, first, that the claimant had suffered temporary total disability from December 18, 1935, to February 13, 1936, and awarded compensation accordingly. This part of the award had been paid at the time the hearing was had. There is no dispute as to that. The commissioner further found that claimant had suffered sixty percent permanent disability and awarded him such compensation from February 13, 1936, for 408 weeks at the rate of $7.26 a week. The commissioner found, in addition, that claimant had been receiving from respondent for 55 weeks wages in excess of what he had been receiving at the time of his accidental injury and that therefore respondent should be given credit for payment of the weekly compensation during this period at the rate of $7.26 per week, and that the balance should be paid at the weekly rate until fully paid or until the further order of the commission, with credit at the rate of $7.26 per week for payments made during the time respondent pays to claimant wages equal to or in excess of wages earned at the time of the injury.

From this award both parties appealed to the district court, the claimant because of the credit that was ordered by the commissioner during the time that he was receiving wages from respondent, the respondent because it claimed that the facts did not justify the claimant being awarded any compensation subsequent to February 13, 1936, when he returned to work. It may be stated at the outset that leaving out of consideration for a moment the fact that claimant returned to work for respondent, there is ample medical evidence

as to the disability of claimant so that the finding of the commissioner and of the trial court would be final on that point.

On this point the respondent points out that claimant returned to work on February 13, 1937, and received higher wages than when he was injured. It is argued that this fact alone prevents the finding of a disability; that is, respondent argues that claimant could not be working and at the same time be disabled.

We cannot agree with this argument. This question was considered in *Gailey v. Manufacturing Co.*, 98 Kan. 53, 157 Pac. 431. There the workman obtained a judgment under the old law. Before the trial he had gone back to work for his employer at his old job. The defendant contended, among other things, that the fact that the workman returned to work for his old employer and later quit his job voluntarily prevented him from recovering. This court said:

"If this employment relieved the defendant of liability, then any employer can escape liability for compensation by retaining the injured employee and paying him wages, although he may not be able to do as good work after the injury as he did before. An injured employee may not wish to continue to work for the one in whose employ he was injured, and because of his injury he cannot obtain as good wages in another place. The injured employee has a right to compensation for his injury. It does not matter that his employer continues to accept his services and pay him regular wages, unless that employment continues for the entire period for which compensation might be allowed. The act fixed the liability when the employee was injured. That liability can be discharged only in the manner directed by the statute." (p. 54.)

In *Sauvain v. Battelle*, 100 Kan. 468, 164 Pac. 1086, in considering a similar case, this court said:

"It is settled that when one is totally or partially incapacitated for hard manual labor he is not to be denied compensation because he obtains employment, even at better wages, at a task which he is physically able to perform." (p. 471.)

To the same effect is *Lombard v. Planing Mill Co.*, 102 Kan. 780, 172 Pac. 32.

*Raffaghelle v. Russell*, 103 Kan. 849, 176 Pac. 640, is a case where the injured workman obtained employment from an employer other than the one for whom he was working when he was injured. With the gratuitous help of fellow workmen and at the expense of pain to himself he received as much as he had been earning at the time of his injury. The defendant argued that this precluded the court from making a finding of permanent partial disability. This court said:

"But it would never do to say that the courageous workman who sticks to his task notwithstanding his pain and injury is to be penalized for so doing. Neither would it do to say that an injured workman who in pain and distress and with the gratuitous help of his fellow workmen can still earn as much as he was wont to do before his strength and vigor were impaired is not entitled to compensation. A workman who is injured is not compelled then and there to lay off for two weeks to protect his rights under the act. The soldier who is wounded, but who still 'carries on,' is looked upon as a hero; the injured workman who likewise attempts to 'carry on' will lose nothing by so doing when his rights become a matter of judicial determination." (p. 851.)

In *Quillen v. Wichita Gas Co.*, 128 Kan. 9, 275 Pac. 1075, the workman had sustained an injury in which his hand was cut in such a way as to injure his thumb. The defendant argued that the evidence did not justify any award for the reason that it showed that the workman had gone back to work and was receiving the same pay as before the injury. This court said:

"But it has been held that the amount a workman received as wages is not necessarily an accurate test of his earning capacity. (*Hood v. Transit Co.*, 106 Kan. 76, 186 Pac. 977.) There was evidence in this case tending to show that after the injury plaintiff was able to perform labor of the character which he had previously performed only with the aid of specially designed tools, or by pain and inconvenience, or the aid of his fellow workmen. Under such circumstance it has been repeatedly held that the fact that the workman received as much wages for his labor after his injury as before does not bar his right to compensation." (p. 9.)

The case of *Beal v. El Dorado Refining Co.*, 132 Kan. 666, 296 Pac. 723, was where the workman was badly burned on the face and head with hot crude oil when a pipe burst. After the injury he returned to work as an oil gauger and was so employed at the time of the hearing before the examiner for the workmen's compensation commission. This work was lighter than he had been doing. The workmen's compensation commission at the trial awarded compensation for certain scheduled injuries about which we are not concerned. He also allowed compensation under paragraph 22 of G. S. 1935, 44-510. This section reads as follows:

"Should the employer and the employee be unable to agree upon the amount of compensation to be paid in any case of injury not covered by the schedule, the amount of compensation shall be settled according to the provisions of this act as in other cases of disagreement: *Provided, however,* In case of temporary or permanent partial disability not covered by schedule the workman shall receive during such period of temporary or permanent partial disability, not exceeding 415 weeks, 60 percent of the difference between the amount he was earning prior to said injury as in this act provided and the amount he is able to earn after such injury in any employment, such com-

pensation in no case to exceed eighteen dollars ($18) per week: *Provided further,* That the minimum of six dollars ($6) per week elsewhere provided in this act shall not apply to injuries covered by the provisions of this paragraph."

The insurance carrier contended that compensation was not allowable under the above paragraph because there was no minimum allowance and the compensation should have been computed on the difference between what claimant was earning at the time of the injury and what he was able to earn, and claimant was demonstrably able to earn $150 a month; hence there would be no difference. On this point this court said:

"Early in the history of the operation of compensation legislation in this state this court held that loss of earning power may result from ineligibility to obtain work to do, as well as from inability to do procurable work (*Gorrell v. Battelle,* 93 Kan. 370, 144 Pac. 244); and that wages paid do not establish ability to earn. (*Gailey v. Manufacturing Co.,* 98 Kan. 53, 157 Pac. 431.) These principles have been applied by this court numerous times, and have the approval of the authorities generally." (p. 672.)

In a further discussion this court considered the effect the disfigurement this workman had undergone on his ability to secure employment from some employer other than the one for whom he was working at the time of his injury. This court held that the disfigurement would hinder him in this respect and that this condition should be considered on the question of permanent disability to earn. The court said:

"How much has the economic status of this disfigured man been lowered by the gruesome consequences of his injury? The statute imposes the duty of determining the question on the compensation commissioner. His determination may be reviewed by the district court with respect both to the facts and the law. This court may review the award of the district court on questions of law only. Whether a material finding is sustained by any evidence, is a question of law, but there is no sound basis for raising the question on this record.

"That claimant was shockingly disfigured was undisputably proved. That disfigurement of the character he suffered will certainly handicap him greatly in procuring employment was fully proved. There was testimony based on knowledge and experience that claimant's disfigurement alone will prevent him from securing work in the open labor market. This evidence furnished sufficient data for determining degree of impairment of ability to earn wages. There is no recognized rule or standard or conventional method for determining the degree, and the office of compensation commissioner was created for the purpose of providing a discreet arbiter to form a judgment, within the limitations of the compensation act, on just such criteria." (p. 675.)

It will be seen that this court has uniformly held that the fact the workman returned to work for the same employer or for another employer, at the same or higher wages, does not prevent him from receiving compensation when the workmen's compensation commission and the trial court have found on substantial evidence that he has sustained a compensable injury. An examination of these authorities will disclose that conclusion was based on various grounds. In the Gailey case the conclusion was based on the fact that to hold as the respondent contends here would enable an employer to defeat the end of the workmen's compensation act by retaining a workman in its employ until after time for an application for compensation had passed and then discharging him. In the later cases the conclusion was put on the fact that a workman might be disabled and return to work and yet his ability to obtain work on the general labor market of the community would be impaired. This court has also held that the fact that fellow workmen helped the injured workman, thus enabling him to hold a job after he returned to work, did not bar a recovery. All these elements are in this case. There can be no doubt that the ability of this workman to secure other gainful employment has been seriously impaired. One general employer of labor testified to this, and there is other evidence that justifies the conclusion. He could not stoop over; he could not do work that would require him to lift; in scraping or painting, he testified, "I just hold on the handrail and kind of balance myself and lay up against the tank once in a while." One doctor placed his disability at between fifty and sixty percent. Another doctor testified that the injuries sustained by claimant would cause pain and that sooner or later he would become irritable and nervous from it. The foreman of the job where claimant was working testified he could not call claimant to do any kind of work; that if he were hiring a man to take that job he would probably hire a man that he could call for any kind of a job. A fellow workman testified that he had observed claimant on his old job—"he was spry and active"—that on the job where claimant is working now "he isn't so spry, he favors himself, he is slower in his movements"; that claimant could not do as much as witness could do even though the witness was sixty-nine years old and claimant was about forty.

This evidence amply justified a finding of permanent partial disability and brought the case within the rule laid down in the authorities cited.

Respondent makes a vigorous argument based on paragraph 22 of G. S. 1935, 44-510. This statute has already been set out in this opinion. The respondent points out the provision of that section wherein it is provided that in the case of permanent partial disability the workman shall be awarded sixty percent of the difference between the amount he was earning prior to the injury and the amount he was able to earn after the injury in any employment. The argument is that since the workman was receiving more from his employer at the time of the hearing than he was receiving at the time of the injury, there would be no difference as provided in the statute, and he should not be awarded compensation under paragraph 22. We have seen, however, in the authorities cited heretofore that the wages a workman receives is not necessarily a test of his earning powers. It is the business of the commissioner of workmen's compensation to consider all the evidence on the question of the degree of disability of the workman, to reach a conclusion as to the facts from this evidence and to make an award in accordance therewith. The work being performed by the workman at the time of the hearing or at any time subsequent to the injury is evidence to be considered along with other evidence, but is not controlling on the commissioner any more than other evidence.

The commissioner seems to have had this understanding at the time he made the award in this case as far as the finding of disability is concerned.

We must now consider the action of the commissioner in requiring in his award that the respondent should have credit on amount due claimant because of the wages paid to the claimant between the time of his injury and the date of the award. The practical result of this decision would be to nullify the effect of the authorities we have quoted here. Indeed, the respondent argues the matter in this court as though the question were whether the finding and award of the commissioner as to disability was wrong in the first place. No authorities are furnished nor much of an argument made on the question of whether the commissioner had jurisdiction to order that respondent should have credit on the wages paid claimant for compensation paid pursuant to the award. The statute gives no such authority to the commissioner. Instead, it has the following provision:

"No claim for compensation, or compensation agreed upon, awarded, adjudged, or paid, shall be assignable or subject to levy, execution, attachment,

garnishment, or any other remedy or procedure for the recovery or collection of a debt, and this exemption cannot be waived." (G. S. 1935, 44-514.)

This certainly indicates the intention on the part of the legislature that compensation should go to the injured workman or his dependents, and to no one else. This would be sufficient to justify the trial court in refusing to sustain so much of the award as ordered the credit to the respondent. Moreover, from what has been said we have concluded that the finding and award made by the commissioner as to disability was a proper one except for the order giving the credit. The judgment of the trial court approving the award as to disability and disapproving the part thereof that directed the respondent to take credit for weekly payments was correct.

The judgment of the trial court is affirmed.