No. 37,776

CLARENCE HILYARD, JR., Claimant, *Appellee*, v. LOHMANN-JOHNSON DRILLING COMPANY, Respondent, and BITUMINOUS CASUALTY COR-PORATION, Insurance Carrier, *Appellants*.

(211 P. 2d 89)

Opinion filed November 12, 1949.

*Ed. R. Moses*, of Great Bend, argued the cause, and *S. R. Blackburn, Tudor W. Hampton* and *Barton Carothers*, all of Great Bend, were with him on the briefs for appellants.

*Vincent G. Fleming*, of Larned, argued the cause, and *W. H. Vernon*, of Larned, was with him on the briefs for appellee.

The opinion of the court was delivered by

PRICE, J.: This is a workmen's compensation case. From a judgment allowing recovery the respondent company (hereinafter referred to as respondent) and its insurance carrier have appealed.

Claimant, an oil field worker by trade, lived in Larned and for five days prior to September 12, 1948, was employed by respondent as a roughneck in the drilling of an oil test well in Pawnee county. His duties were that of a driller's helper. On the morning of September 12, 1948, he drove to work in his own car accompanied by his driller, Adams. Upon arrival at the well claimant changed clothes, assisted in oiling and greasing the equipment and then started in to wash down the tool houses with rags and kerosene. In doing so his clothing became partially saturated. Before he finished washing the outside of the second tool house the kerosene became dirty and he then got a bucket of liquid, which he thought was kerosene, from a barrel which was not marked to indicate that it contained gasoline. After cleaning the tool houses he and one R, a fellow roughneck, decided that inasmuch as there was nothing else to do right at that particular time they would work on their cars. Both drove their cars up next to the drilling rig so as to be available in the event their services were needed on the job. Claimant raised the hood on his car and started to wash the engine with a paint brush and the fluid, which was probably gasoline, remaining in the bucket. In doing so he touched the starter switch or something with the brush, causing a spark which in turn ignited the fluid and set fire to his clothing. As a result he received severe burns, for which he has since been treated.

At the hearing the examiner found that claimant sustained personal injuries by accident arising out of and in the course of his employment, and handed down an award in favor of claimant and against respondent and its insurance carrier.

On appeal, the district court adopted and ratified the findings and award of the examiner and in addition rendered the following finding:

"It is the custom in the oil fields for the employees to provide their own transportation to and from work. It is also the custom for the employees to use their own automobiles in running errands and in going to town for material. They receive no extra pay for this service and the use of their automobiles. It is the custom for the employees when not busy at other work, to work on their automobiles, in order to have the automobiles ready to go on errands and transport the employees to and from work."

The basic question involved in the appeal before us is whether the injury sustained by claimant arose out of and in the course of his employment. A somewhat detailed analysis and narration of the evidence is therefore necessary.

The claimant testified, in addition to those facts heretofore set out, that he had worked in the oil fields for several years, but had worked for respondent only five days prior to the date of the accident. That respondent did not provide transportation to and from work nor pay him his driving expenses. That he had not seen other men working on their cars on this particular job, but that on other oil-field jobs he had seen men working on their cars in off moments; that he had never worked on a drilling job where the men were not permitted to work on their cars when there was nothing else to do, and that on the particular job in question he had never been told not to work on his car in his spare time. That he thought Adams, the driller and boss, saw him pull his car up near the rig and commence to work on it and that he made no objection. He further testified that in his experience every man who drives his car to and from such a job is supposed to go to town at any time to get materials or for repairs whenever necessary. On cross-examination he stated that at the time he received his injuries he was not performing any duties that anyone connected with respondent had required him to do. That getting to and from work was not on company time and that he had never used his car for a single errand for his employer, the respondent.

The witness, McGinnis, who did not know claimant personally, testified that he had worked in the oil fields since 1925, and in answer to a question concerning a custom with reference to the men on the job being permitted to work on their cars during their spare time, answered:

"Well in your leisure time, we will say, it is a roughneck's paradise to get to work on your car around a rig. If you are not very busy and in case your car is not in running condition and you want to keep it up, the driller will give you permission to go ahead and work on your automobile."

He further testified that on other jobs he had often seen men working on their cars when not otherwise occupied, and that he had never worked for a company that told the men not to work on their cars in their spare time. On cross-examination, when asked whether he had ever worked for a single employer who required or paid him to work on his own personal car on company time his answer was that they never did tell him not to do so.

Witness Copeland, an oil-field worker for approximately fifteen years, when asked concerning any custom as to employees being permitted to work on their cars during slack time, answered:

"It is, it is a privilege granted whenever your work is finished there is a certain amount of work that has got to be done when everything is washed up and cleaned up and everything is in its place, and the drilling machinery working and there is nothing but drilling, and you are at liberty to do what you please because you have got to work hard when there is work to be done under all kinds of conditions, you may be mud all over and may be rain and it may be snow, you have got to do it whenever it is to be done, when it is all done you are granted that privilege when you see fit to do it."

He further stated that as a driller he had never refused his men the privilege of working on their cars when there was nothing else to be done.

Adams, the driller in charge of the operation for respondent company, was called as a witness for respondent and he testified that he didn't believe he saw claimant do any work on his car at the time in question, although he had seen him in it, but didn't see what he was doing with it. That claimant did not ask permission to do any work on his car; that he had never directed employees to work on their personal cars; that he was in the doghouse looking over the reports of the night before at the time of the fire; that it was the order of the tool pusher that no work be done on personal cars on company time and that such rule had been laid down approximately two years prior thereto by his superior. However, he further stated that the company rule referred to was not in writing and was not posted on the premises.

In considering this appeal certain fundamental principles are to be kept in mind.

The provisions of the workmen's compensation act are to be liberally construed in favor of the workmen with the view of effecting its purpose. *Alexander v. Chrysler Parts Corp.*, 167 Kan. 711, 207 P. 2d 1179.

The purpose of the act is to burden the industry with the economic loss to a workman, or his dependents, resulting from accidental injury sustained by the workman arising out of and in the course of his employment. *Rush v. Empire Oil & Refining Co.*, 140 Kan. 198, 34 P. 2d 542.

In order for an accident to be compensable under the act it must arise out of *and* in the course of employment. G. S. 1935, 44-501; *Carney v. Hellar*, 155 Kan. 674, 127 P. 2d 496.

The phrase "out of employment" points to the cause or origin of the accident and requires some causal connection between the accidental injury and the employment. *Carney v. Hellar*, supra.

The phrase "in the course of employment" means that the injury

happened while the workman was at work in his employer's service, and relates to the time, place and circumstances under which the accident occurred. *Carney v. Hellar,* supra.

It is the function of the trial court to pass upon the facts in a workmen's compensation case, and where its findings are supported by substantial, competent evidence they will not be disturbed on appeal. *Holler v. Dickey Clay Mfg. Co.,* 157 Kan. 355, 139 P. 2d 846; *Alexander v. Chrysler Motor Parts Corp.,* supra.

The scope of this court's appellate review is limited to "questions of law," which in the final analysis simply means that its duty is to determine whether the trial court's factual findings are supported by any substantial, competent evidence. G. S. 1935, 44-556; *Meredith v. Seymour Packing Co.,* 141 Kan. 244, 40 P. 2d 325; *Holler v. Dickey Clay Mfg. Co.,* supra; *Alexander v. Chrysler Motor Parts Corp.,* supra.

It may be conceded that at the time claimant sustained his injuries he was in his employer's service—that is, he was "on the job"—and we therefore have no difficulty in agreeing with the trial court that the accident occurred "in the course of" employment. The only question remaining is—did it arise "out of" the employment?

Respondent insists that the answer must be "no" and that by no stretch of the imagination can it be said complainant was performing any service for respondent when working on his own personal car, and that he would have been equally exposed to such hazard and injury had he been at home, or any other place, as he was on this particular job. It is further argued that so-called custom and usage have no function in a case such as this—but that if they do—then such custom and usage were not shown by clear and convincing evidence.

In a number of cases this court has held that incidents and circumstances of employment may be shown by evidence of custom and usage (*Thomas v. Manufacturing Co.,* 104 Kan. 432, 179 Pac. 372, 6 A. L. R. 1145; *Chance v. Coal & Mining Co.,* 108 Kan. 121, 193 Pac. 889; *Taylor v. Hogan Milling Co.,* 129 Kan. 370, 282 Pac. 729; *Corpora v. Kansas City Public Service Co.,* 129 Kan. 690, 284 Pac. 818) and that where such custom is shown recovery is not barred merely because at the exact time of the injury the workman was doing some act not strictly in furtherance of his employer's business. At 58 Am. Jur., Workmen's Compensation, § 235, it is said:

"An injury is not necessarily rendered noncompensable by the fact that

at the time of its occurrence the employee was engaged in the performance of some act for the benefit of himself or a third person, since such an act may, in many instances, be so related to or connected with the employment as to make it a reasonable incident thereof."

and in 71 C. J. 678, Workmen's Compensation, § 425, we find the following:

"Where the injury is sustained while the employee, with the permission of the employer, ceases work for a time for purposes of his own, the continuity of the employment is not impaired, and the injury arises in the course of the employment, . . . It is not essential that the employee be engaged in an act directly beneficial to his employer in order that the resulting injury may be said to have arisen out of the employment, and the fact that the employee's action may have been impelled by a personal motive does not prevent the application of the compensation statute."

Time and space do not permit our extending this opinion unduly with a detailed discussion of the facts of those cases dealing with the question whether the particular accident and injury arose "out of" the employment, but reference is made to *Taylor v. Hogan Milling Co.*, supra, and *Repstine v. Hudson Oil Co.*, 155 Kan. 486, 126 P. 2d 225, for a general discussion of the subject.

Here the evidence showed that there was a general custom in the oil fields for the men to provide their own transportation to and from work; that it was customary for them to work on their own cars when not otherwise occupied and that it was customary for them to use their cars in running errands for materials and repairs whenever necessary. In view of this and the other evidence, can it be said that claimant's working on his car was not incidental to his employment? We think not. The words "causal connection" certainly do not mean that the accident must have resulted directly and immediately from performance of the work for which the workman was employed. Such a narrowed interpretation would mean that whenever a workman was not directly engaged in the actual work to be done he would be without protection under the law. *Bailey v. Mosby Hotel Co.*, 160 Kan. 258, 160 P. 2d 701. He was never told not to work on his car on this or any other oil-field job. The company rule testified to by Adams, the driller, was not in writing and had never been posted on the premises or otherwise communicated to claimant.

The trial court found that claimant sustained injuries by accident arising out of and in the course of his employment and we are unable to say that such finding was not supported by substantial,

competent evidence. Such being the case, we have no alternative than to affirm the judgment, and it is so ordered.

PRICE, J. (dissenting): I am unable to agree with the conclusion reached in the majority opinion and will state my reasons very briefly. I concede the rule to be that the workmen's compensation act is to be construed liberally in favor of the workman so as to effectuate its purpose; that findings of fact by the trial court, when supported by substantial, competent evidence, are not to be disturbed on appeal, and that the function of this court is limited to a review of questions of law which, with reference to the facts, means that its duty is to determine whether the trial court's factual findings are supported by any such evidence. I also agree with the rule to the effect that there are many acts which, in the nature of things, are to be considered as "incidental" to the very employment itself, and that recovery should not be barred merely because at the exact time of the injury the workman was doing some act not *strictly* in the furtherance of his employer's business.

But I cannot agree with the holding in the majority opinion that claimant's injuries arose *out of* his employment. He attempted to bring himself under the protection of the act by evidence of "custom" in the oil fields generally. Granted there are instances where so-called custom is so much a part of the daily routine of a particular employment as to render it a very part of the employment, so to speak, but this is not one of those cases. Furthermore, where in this record is there any evidence of custom on this particular job with reference to men working on their personal cars in their spare time?

And even though there were such evidence, how could it be said that claimant's injuries arose *out of* his employment? I fail to see any "causal connection" between the accidental injury and the employment. Working on his car was no part of, or even incidental to, the employment. The purpose of the act from its very language and as defined in our many decisions, is to burden industry with the economic loss to a workman, or his dependents, resulting from accidental injury sustained by a workman *arising out of and in the course of his employment*. This does not mean, however, that every injury, no matter how remote, is compensable.

In conclusion, I merely wish to say that I think the result reached in the majority opinion is an unreasonable and unwarranted judicial extension of the provisions of the act. In my opinion there was *no*

evidence before the trial court to support a finding that the injuries arose *out of* the employment and I would reverse the case and enter judgment for appellants.

WEDELL, J., concurs in the foregoing dissenting opinion.