No. 38,159

JASPER N. DAVIS, JR., *Appellee,* v. C. F. BRAUN & COMPANY and LUMBERMENS MUTUAL CASUALTY COMPANY, *Appellants.*

(223 P. 2d 958)

Opinion filed November 10, 1950.

*Walter G. Klamm,* of Kansas City, argued the cause, and *Jerome S. Koehler,* of Kansas City, was with him on the briefs for the appellants.

*James K. Cubbison,* of Kansas City, argued the cause, and *Blake A. Williamson* and *Lee Vaughan,* both of Kansas City, and *F. M. Kennard,* of Kansas City, Missouri, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Price, J.: In this case the respondent employer and its insurance carrier have appealed from a judgment allowing recovery in a workmen's compensation case.

At the hearing before the commissioner it was stipulated that the accident arose out of and in the course of employment, and the evidence concerning claimant's injuries, medical treatment and extent of his disability, was substantially as follows:

Claimant, a large husky man, thirty-one years of age and weighing over 200 pounds, was injured on May 20, 1949, while engaged in his work as a boilermaker rigger when a shell weighing approximately twelve to eighteen tons, which he and other workmen were attempting to straighten and adjust, slipped sideways, catching the upper part of his body between the shell and scaffolds upon which the men were working. Immediately thereafter he was given first-aid treatment for scratches and abrasions on his right arm and chest. As it was near the end of a Friday working day and the plant was to be closed on Saturday and Sunday he went on to his home and received no further medical attention at that time. He continued in the employ of respondent employer but was assigned much lighter work in the parts department. On June 15, 1949, he went to the company doctor at which time X rays of his right shoulder and arm were taken. These showed no bones to be fractured but he had rather severe swelling and soreness in his right shoulder. He continued to be treated by the company doctor two or three times a week until July 5, 1949, at which time the company put into effect a new general rule requiring that medical care for injured employees, other than first-aid treatment, be had after working hours. From that date on claimant failed to go to the doctor for further medical care and he testified that this was because such treatments would not only be on his own time but at his own expense. He continued in the employ of respondent company until September 9, 1949, on which date there was a general layoff of employees, including claimant. On October 12, 1949, it appears that he again saw the company doctor when he reported to him for a rating examination.

On October 14, 1949, claimant went to a doctor of his own choosing concerning his injuries, and he went back to this doctor again on January 14, 1950.

In November, 1949, claimant worked as a cab driver for a taxicab company in Kansas City for about two and a half weeks, and on or

about December 1, 1949, he went to work as a salesman for a chemical and supply company, calling on garages and service stations, his pay being on a straight commission basis. No evidence was introduced concerning what claimant had earned as a cab driver or what he had earned or was earning as a salesman.

Claimant testified that following the injury his right arm and shoulder were sore; that he was unable to do any heavy work which required lifting or overhead work, and that following his layoff by respondent employer he had not been able to engage in his usual work as a boilermaker rigger due to the condition of his shoulder. He further testified that he had contacted his union on two or three occasions concerning jobs in his line, but that the union officials did not consider him able to perform his former type of heavy work.

The doctor to whom claimant went on October 14, 1949, a reputable orthopedic surgeon, testified concerning his examination of claimant on that date and again on January 14, 1950, and stated that in his opinion claimant sustained a disability of thirty percent of the arm alone in the absence of further treatment, but that in rating his body as a whole he would place the percentage of disability at twenty percent. This witness described the grating and soreness in the right shoulder and stated that he considered some of claimant's condition to be permanent in nature, but that probably it would be improved with adequate treatment. He defined the condition as chronic subdeltoid bursitis and stated that even had he received continuous treatment from the first day after the accident the condition might still have become chronic.

The company doctor testified in behalf of respondents and he described his first contact with claimant, at which time he gave him heat treatments for his shoulder. According to him claimant complained of the pain and lack of freedom of movement in his shoulder, and the substance of his further testimony was that claimant had not been seriously injured, that he considered him able to do the type of work he formerly had done and that he had sustained no disability to the body as a whole.

It was stipulated by the parties that claimant's average weekly wage at the time of his accidental injury was $90, and at the conclusion of the hearing the commissioner found that claimant was suffering a fifteen percent permanent partial disability to the body as a whole and allowed compensation for fifteen percent disability for a period not to exceed 415 weeks, payable at the rate of $8.10

per week. The findings and award of the commissioner were upheld and adopted by the lower court, whereupon respondents perfected this appeal.

Respondents urge a number of grounds for reversal, several of which, for the purpose of consolidation and brevity, may be grouped together, and they are that (1) the award and judgment are not justified by the evidence as a matter of law, (2) the award and judgment are erroneous because of claimant's failure and refusal to submit to medical treatment, and that his disability, if any, was not proximately caused by the accident but was the direct result of his failure and refusal to accept medical treatment, and (3) the award and judgment are erroneous because of the great divergence of medical testimony introduced.

At the outset, in the consideration of these grounds, we are confronted with the rule that, the scope of this court's appellate review in a workmen's compensation case is limited to "questions of law" which, in the final analysis, simply means that its duty is to determine whether the trial court's factual findings are supported by any substantial, competent evidence. (G. S. 1935, 44-556; *Hilyard v. Lohmann-Johnson Drilling Co.*, 168 Kan. 177, 211 P. 2d 89, and cases cited.) It is true that here there was conflicting testimony concerning the circumstances of claimant's alleged failure and neglect to take further medical treatments subsequent to July 5, 1949, and it is also true that there was a conflict in the medical testimony concerning the extent of claimant's injuries and whether they would have responded to more frequent medical attention and care, but all of those matters were before the commissioner and the lower court on appeal, and the rule is that when a trial court makes a finding upon conflicting evidence adduced in a workmen's compensation case such finding is conclusive and will not be disturbed by this court on appeal. (*Keltner v. Swisher*, 168 Kan. 184, 211 P. 2d 75, and cases cited.) From the record before us we cannot say that the award and judgment have no basis in the evidence and that in any of the aforementioned particulars the judgment of the lower court was erroneous.

We pass now to the complaint most strenuously urged by respondents, namely, that the method of computation of the award used by the commissioner and upheld by the lower court was erroneous and contrary to law.

As heretofore stated, it was stipulated that claimant's average weekly wage at the time of his injury was $90 and the commissioner

arrived at the amount of award by figuring fifteen percent of sixty percent of this $90 per week figure, the result being $8.10 per week for not to exceed 415 weeks, as set by the statute, G. S. 1947 Supp. 44-510, (3) subparagraph 22, which provides:

"(22) Should the employer and the employee be unable to agree upon the amount of compensation to be paid in any case of injury not covered by the schedule, the amount of compensation shall be settled according to the provisions of this act as in other cases of disagreement: *Provided, however,* In case of temporary or permanent partial disability not covered by schedule the workman shall receive during such period of temporary or permanent partial disability not exceeding four hundred fifteen weeks, 60 percent of the difference between the amount he was earning prior to said injury as in this act provided and the amount he is able to earn after such injury in any employment, such compensation in no case to exceed twenty dollars per week: *Provided further,* That the minimum of seven dollars per week elsewhere provided in this act shall not apply to injuries covered by the provision of this paragraph."

Respondents' argument in this connection is twofold—first, that the compensation awarded claimant was calculated solely on the basis of the percentage of disability against his weekly earnings prior to the injury and was not determined on the basis of the difference between the amount of earnings prior to his injury and the amount he was able to earn after such injury in any employment, as provided by the statute; and secondly, that if such a basis as used by the commissioner in computing the award is to be followed, then the fifteen percent permanent partial disability should apply to the 415 week period—in other words, that disability benefits should not have been allowed for in excess of 62.25 weeks.

It is argued that a literal reading of the statute, above quoted, providing for compensation for an unscheduled injury, such as here, means that compensation shall be computed on the basis of sixty percent of the *difference* between the amount the one injured was earning prior to the injury and the amount he is able to earn after such injury in any employment, and that since there was no evidence of the amount claimant earned after his injury, or was able to earn in any employment, there was a total lack of proof upon which the commissioner could compute the award.

We have given careful consideration to respondents' arguments in this connection, but are unable to find any merit in them. In a long line of decisions this court has upheld the method of computation of an award to an injured workman used by the commissioner in this case, even where the evidence showed the injured workman to

be earning as much or even more after his injury in the same or other employment.

In *Beal v. El Dorado Refining Co.*, 132 Kan. 666, 296 Pac. 723, the question was gone into and earlier decisions were reviewed. The court said:

"Early in the history of the operation of compensation legislation in this state this court held that loss of earning power may result from ineligibility to obtain work to do, as well as from inability to do procurable work . . .; and that wages paid do not establish ability to earn. . . . These principles have been applied by this court numerous times, and have the approval of the authorities generally." (p. 672.)

Again, in *McGhee v. Sinclair Refining Co.*, 146 Kan. 653, 73 P. 2d 39, 118 A. L. R. 725, the question was before this court, and after the authorities were reviewed at length, it was said:

"It will be seen that this court has uniformly held that the fact the workman returned to work for the same employer or for another employer, at the same or higher wages, does not prevent him from receiving compensation when the workmen's compensation commission and the trial court have found on substantial evidence that he has sustained a compensable injury." (p. 658.)

"Respondent makes a vigorous argument based on paragraph 22 of G. S. 1935, 44-510. This statute has already been set out in this opinion. The respondent points out the provision of that section wherein it is provided that in the case of permanent partial disability the workman shall be awarded sixty percent of the difference between the amount he was earning prior to the injury and the amount he was able to earn after the injury in any employment. The argument is that since the workman was receiving more from his employer at the time of the hearing than he was receiving at the time of the injury, there would be no difference as provided in the statute, and he should not be awarded compensation under paragraph 22. We have seen, however, in the authorities cited heretofore that the wages a workman receives is not necessarily a test of his earning powers. It is the business of the commissioner of workmen's compensation to consider all the evidence on the question of the degree of disability of the workman, to reach a conclusion as to the facts from this evidence and to make an award in accordance therewith. The work being performed by the workman at the time of the hearing or at any time subsequent to the injury is evidence to be considered along with other evidence, but is not controlling on the commissioner any more than other evidence." (p. 659.)

Here there was evidence that claimant was no longer able to perform his usual work as a boilermaker rigger—in other words, he was no longer able to earn on the open labor market in his line of work. We do not understand it to be the intent and purpose of the workmen's compensation act to deprive an injured workman of compensation for his injuries merely for the reason that he subsequently earns as much or more at the same or other employment. The whole

theory underlying the act is that by reason of his accident the employer is required to compensate the workman for loss resulting by reason of his inability to perform the same labor he was able to perform prior to the injury. At the many sessions of the legislature since this court has so interpreted the section of the act in controversy that body has not seen fit to amend the act so as to bring about a different result, and we are therefore to assume that our interpretation has met with legislative sanction and approval.

We hold, therefore, that the method of computation used by the commissioner, and approved by the lower court, was in accordance with the statute and the rule many times announced by this court. We find no error in the record and the judgment of the lower court is therefore affirmed.

PRICE, J. (dissenting): I dissent from that portion of the court's opinion which holds that the method of computation used by the commissioner and approved by the lower court was in accordance with the provisions of the statute under consideration, and will state my views very briefly.

Notwithstanding the liberal construction rule in favor of the injured workman—with which I agree—I cannot agree that the court is justified in construing the act in a manner contrary to its plain and express wording.

My point is simply this—here claimant's average weekly wage was $90 at the time of his injury. Not one word of evidence was offered as to what he earned in either of his two subsequent employments or as to what he was able to earn in any employment, yet the commissioner computed the award solely on the basis of his earnings at the time of his injury.

The statute, G. S. 1947 Supp. 44-510, (3) subparagraph 22, (quoted in full in the court's opinion) under which this award was made, provides that:

". . . the workman shall receive . . ., 60 percent of the *difference between the amount he was earning prior to said injury . . . and the amount he is able to earn after such injury in any employment,* . . ." (Emphasis supplied.)

On numerous occasions this court is called upon to interpret a statute the wording and intent of which are not clear, but here it seems to me there is no room for "judicial interpretation" and that the doctrine of *stare decisis* is being overworked. The legislature

has fixed the yardstick for measuring compensation in a case such as this in plain and unambiguous language, and its mandate should be followed. If an inequitable and unjust result should arise from a literal interpretation of the provision in question I think the legislature and not this court should amend it.

WEDELL, J., concurs in the foregoing dissent.