No. 44,338

FORREST PUCKETT, *Appellee* and *Cross-Appellant*, v. C. K. MINTER DRILLING COMPANY and UNITED STATES FIDELITY AND GUARANTY COMPANY, *Appellants* and *Cross-Appellees*.

(410 P. 2d 414)

Opinion filed January 22, 1966.

*Richard C. Hite*, of Wichita, argued the cause, and *William A. Kahrs, Robert H. Nelson, H. W. Fanning, Darrell D. Kellogg* and *Roger Sherwood*, all of Wichita, were with him on the brief for the appellants and cross-appellees.

*Ted R. Morgan*, of Lakin, argued the cause, and was on the brief for the appellee and cross-appellant.

The opinion of the court was delivered by

FONTRON, J.: This is a workmen's compensation case. The claimant, Forrest Puckett, was employed as an oil field driller by the respondent, C. K. Minter Drilling Company. While so employed, he was struck on the side of the head by a heavy bushing, as a result of which he received a concussion, skull fracture and serious injury to his back.

At a hearing before the workmen's compensation examiner, where it was stipulated that claimant sustained personal injury by accident arising out of and in the course of his employment, the claimant was found to have sustained a twenty-five percent permanent partial disability and was awarded compensation on that basis. This award was approved by the Workmen's Compen-

sation Director. On appeal, the district court found that claimant had suffered permanent partial disability of seventy-five percent and modified the award accordingly. The respondent and its insurance carrier have appealed from the judgment of the district court and the claimant has cross-appealed. We shall refer to the appellants and cross-appellees as the respondents and to the appellee and cross-appellant as the claimant.

The issue presented in this appeal is whether the district court applied the correct standard in determining the extent of the claimant's disability.

Before this question can be answered, a brief summary of the pertinent evidence is needed. The claimant testified, in substance, that he is 52 years old, married and has four children, two at home and two in college; that he has an 8th grade education and has always used his strength to make a living; that he had worked as an oil field driller off and on about four years, before which he had done welding in the oil fields and prior to that had been a farmer; that all three occupations require a great deal of physical strength and labor and the work involves heavy lifting and straining.

Claimant also testified that after he had undergone a double spinal fusion, he tried general construction work but had to quit because it hurt his back and leg; since his operation he worked for a time at mechanical work and bench welding of small items and now does light machine work and bench welding for his old employer, where he has a hoist and is helped by fellow-employees; the job is part time, but not permanent; that he did receive $3.25 an hour in the oil fields but is paid only $1.65 per hour at his present job; that he cannot do drilling work or oil field welding now because he has to protect his back; that he still has difficulty with his back and legs when he goes home, and that is left leg hurts at night.

Dr. Cline D. Hensley, a Wichita physician specializing in orthopedic surgery who had performed the spinal fusion, testified that it would not be advisable for the claimant to lift heavy objects such as truck tires, pipes and objects of that nature, and that he should avoid shoveling and handling big trucks and machinery; that claimant is totally disabled for repeated heavy manual labor and should change his employment rather than do lifting and straining throughout an entire day; that claimant has a twenty-five percent permanent partial disability in the general labor market; that in arriving at this rating he did not take into consideration

the type of work claimant had done during his lifetime or claimant's previous work experience. Dr. Hensley further testified:

"What I am trying to say is that I didn't feel that I should rate a manual laborer different from a bank clerk who had sustained the same injury to the back. It is a functional incapacity that I am trying to evaluate. I have rated this man on the same basis that I rate all industrial orthopedic injury cases."

On the basis of this record, the trial court made findings of fact which, in general, were to the effect that Dr. Hensley's rating of twenty-five percent disability was not correct because the standard he used was wrong; that the claimant's contention of one hundred percent disability was also faulty; and that claimant had suffered permanent partial disability of seventy-five percent. The court also specifically found:

"3. That the actual functions of a driller involve continuous heavy manual labor and lifting to such a large extent that the job of a driller cannot now be performed by the claimant.

"4. That the loss of earning power by the workman is the fundamental basis for allowance of compensation; that as used in the Kansas decisions, the words 'obtaining and retaining work in the open labor market' mean the ability to obtain and retain work of the same kind and character that the workman was able to perform prior to his injury.

. . . . . . . . . . . .

"7. That the correct standard of disability rating is the extent to which the claimant is impaired from performing the various functions of a driller; that in order to determine this impairment it is necessary to determine the functions of a driller.

"8. The Court finds that while part of the job of a driller is supervisory in nature directing the other members of the drilling crew that as the duties and functions of a driller are set out in the evidence at least 75% of the functions of the job of a driller involve heavy manual labor and lifting and that the claimant is physically unable to perform the heavy manual labor and lifting functions of the job of a driller."

Both claimant and respondents criticize the conclusions reached by the trial court, and have appealed from its judgment.

We shall consider first the respondents' contention that the basis used by Dr. Hensley in rating claimant's disability was correct, and that the trial court erred in not accepting the doctor's evaluation of disability. Coupled with this contention is the corollary claim that the trial court adopted an erroneous method of rating disability. We note, at this point, that the respondents have abandoned the claim originally made that the findings are unsupported by the evidence and now rely solely on the proposition that the findings are based on an improper conception of the law.

The statutory formula for measuring the compensation to be allowed for permanent partial disability resulting from non-scheduled injuries is set out in K. S. A. 44-510 (3) (*c*) (24) as being ". . . sixty percent (60%) of the difference between the amount he [workman] was earning prior to said injury . . . and the amount he is able to earn after such injury in employment . . ." It will be seen that the legislature prescribed no method for determining the amount an injured workman is able to earn in employment after his injury. Many years ago, however, this court in *Gorrell v. Battelle*, 93 Kan. 370, 144 Pac. 244, said of a similar predecessor statute (L. 1911, ch. 218, Sec. 12):

"It will be observed that compensation is awarded for incapacity to work as a result of injury. . . .

"What the legislature had in mind was compensation for loss of earning power as a workman as a result of injury. . . ." (p. 375.)

Two years later, in *Sauvain v. Battelle*, 100 Kan. 468, 164 Pac. 1086, a case wherein *Gailey v. Manufacturing Co.*, 98 Kan. 53, 157 Pac. 431, and *Dennis v. Cafferty*, 99 Kan. 810, 163 Pac. 461, were cited and followed, it was said by this court:

"It is settled that when one is totally or partially incapacitated for hard manual labor he is not to be denied compensation because he obtains employment, even at better wages, at a task which he is physically able to perform." (p. 471.)

Thus was fashioned the pattern which has consistently guided the steps of this court to the present date. In *Beal v. El Dorado Refining Co.*, 132 Kan. 666, 296 Pac. 723, we declared:

"Early in the history of the operation of compensation legislation in this state this court held that loss of earning power may result from ineligibility to obtain work to do, as well as from inability to do procurable work (*Gorrell v. Battelle*, 93 Kan. 370, 144 Pac. 244); and that wages paid do not establish ability to earn. (*Gailey v. Manufacturing Co.*, 98 Kan. 53, 157 Pac. 431.)" (p. 672.)

In a somewhat later case, *Rupp v. Jacobs*, 149 Kan. 712, 88 P. 2d 1102, this court asserted that:

". . . The whole theory underlying the compensation act is that by reason of his accident the employer is required to compensate the workman for loss resulting by reason of his inability to perform the same labor he was able to perform prior to the injury. . . ." (p. 717.)

A statement which fairly represents the tenor of our several holdings is found in the more recent case of *Daugherty v. National Gypsum Co.*, 182 Kan. 197, 318 P. 2d 1012, where it is said:

"The criterion for compensation under the statute is *disability* of the workman resulting from personal injury by accident arising out of and in the course of his employment. 'Disability' as used in G. S. 1955 Supp. 44-510 (3) (c) (24) is the inability of the workman to perform work he was *able to perform* prior to his injury, and is the test by which compensation is measured for injury arising out of and in the course of his employment. . . ." (p. 202.)

We entertain no doubt that the central purpose of the statute is to compensate an injured workman for his loss in earning capacity due to a permanent partial disability. However, the respondents insist that this loss must be measured in terms of the workman's lack of ability to compete *in the open labor market*. In support of this position, they point to a number of cases where similar language is used.

For example, in *Daugherty v. National Gypsum Co.,* supra, we said:

"Generally speaking, the loss of the earning power of the workman is the theoretical basis for the allowance of compensation. In a long line of decisions this court has held that loss of an injured workman's earning power may result from his ineligibility *to obtain* work as well as from inability *to perform* procurable work due to the impairment of his physical fitness, and that wages paid do not establish ability to earn [citing cases]. Permanent partial disability of an injured workman based upon substantial medical testimony is compensable notwithstanding he may earn as much or more after his injury in the same or other employment. The rule is based upon the fact that partial general body disability is a definite loss to the injured workman, and is a deterrent to his obtaining and retaining work *in the open labor market* [citing cases]." (pp. 202, 203.) (Emphasis supplied.)

The foregoing language from Daugherty, including the phrase, "in the open labor market" has been quoted or cited in the following cases: *Smith v. Jones,* 185 Kan. 505, 509, 345 P. 2d 640; *Hallett v. McDowell & Sons,* 186 Kan. 813, 819, 352 P. 2d 946; *Taber v. Tole Landscape Co.,* 188 Kan. 312, 315, 362 P. 2d 17; *Peschka v. Wilkinson Drilling Co.,* 192 Kan. 126, 133, 386 P. 2d 509.

We have no quarrel with the Daugherty decision. However, the phrase "in the open labor market" cannot be taken out of context or considered in isolation, but must be construed harmoniously with other language used in Daugherty as well as with our decisions in other cases. The respondents completely misinterpret the meaning of Daugherty when they argue that it authorizes the method of evaluating disability used by Dr. Hensley.

When Dr. Hensley testified that he used the general labor market

as a whole in making his disability rating; that he was trying to evaluate a functional disability; and that "I didn't feel that I should rate a manual laborer different from a bank clerk who had sustained the same injury to the back," we believe he clearly deviated from the correct standard of evaluating disability for compensation purposes.

The correct test for determining loss of earning capacity is, in our opinion, the extent to which there has been an impairment of the injured workman's ability to procure in the open labor market, and to perform and retain, work of the same type and character he was capable of performing before his injury. In *Dobson v. Apex Coal Co.,* 150 Kan. 80, 91 P. 2d 5, the court said:

". . . Hence, total disability does not mean absolute incapacity to do anything, although, if permanent, it is the most complete disability recognized by our compensation act. It does mean inability to work and earn wages in the same or similar employment in which the workman was engaged. . . ." (p. 84.)

The same view is expressed in *Davis v. Braun,* 170 Kan. 177, 223 P. 2d 958, where we stated:

"Here there was evidence that claimant was no longer able to perform his usual work as a boilermaker rigger—in other words, he was no longer able to earn on the open labor market *in his line of work.* We do not understand it to be the intent annd purpose of the workmen's compensation act to deprive an injured workman of compensation for his injuries merely for the reason that he subsequently earns as much or more at the same or other employment. The whole theory underlying the act is that by reason of his accident the employer is required to compensate the workman for loss resulting by reason of his inability to perform the *same labor he was able to perform prior to the injury.* At the many sessions of the legislature since this court has so interpreted the section of the act in controversy that body has not seen fit to amend the act so as to bring about a different result, and we are therefore to assume that our interpretation has met with legislative sanction and approval." (pp. 182, 183.) (Emphasis supplied.)

Our latest case on the subject is *Gutierrez v. Harper Construction Co.,* 194 Kan. 287, 398 P. 2d 278, where this court squarely faced the issue by saying:

"The whole theory underlying the workmen's compensation act is that by reason of the accident the employer is required to compensate the workman for loss resulting by reason of his inability to perform the same labor he was able to perform prior to the injury. (*Taber v. Tole Landscape Co.,* 188 Kan. 312, 362 P. 2d 17; *Daugherty v. National Gypsum Co.,* 182 Kan. 197, 318 P. 2d 1012; *Davis v. Braun,* 170 Kan. 177, 223 P. 2d 958; *Rupp v. Jacobs, supra.*)

"The loss of earning power of the workman is the theoretical basis for the allowance of compensation. Loss of earning power may result from his inability to obtain work as well as from inability to perform procurable work due to the impairment of his physical fitness, and wages paid do not establish ability to earn. (*Howerton v. Goodyear Tire & Rubber Co.*, 191 Kan. 449, 381 P. 2d 365.) As was said in *Daugherty v. National Gypsum Co.*, supra, at page 203, 'The rule is based upon the fact that partial general body disability is a definite loss to the injured workman, and is a deterrent to his obtaining and retaining work in the open labor market (citing cases).' The words 'obtaining and retaining work in the open labor market' means the ability to obtain and retain work of the *same kind and character that the workman was able to perform prior to his injury.* (*Davis v. Braun*, supra, p. 182.) The fact that a workman is able to obtain work on the open labor market of a different kind and nature from that which he was able to perform prior to his injury is not grounds, under our workmen's compensation statute and our decisions, for denying his compensation for the injuries sustained and the resultant disability." (pp. 290, 291.) (Emphasis supplied.)

We must now inquire whether the trial court applied the proper test in determining the compensation due claimant. In posing this question, the respondents contend that the award was measured solely by claimant's inability to work as an oil field driller. We believe this to be a too narrow construction of the court's findings. The impact of the trial court's findings, considered in their entirety, strikes us as being that claimant is now unable to do heavy manual labor of the sort which comprised seventy-five percent of the work he did prior to his injury.

According to the evidence, the claimant had always engaged in occupations requiring hard physical exertion. Now, because of his injury, he cannot perform that kind of labor. Consequently, when the court found that claimant could no longer function as a driller, seventy-five percent of whose functions involved strenuous physical labor, we believe the findings are entitled to the construction that claimant's employability had been reduced by seventy-five percent in the open market in his line of work. So construed, it is our judgment that the test used by the court to measure claimant's disability was compatible with the standard established by our decisions.

As we have already indicated, the claimant has filed a cross-appeal. His claim of error is based on the hypothesis that, under the law as it exists in this state, he is totally disabled. We deem such an assumption unwarranted.

Obviously, the claimant's disability will not bar him from all

types of labor within his capacities. The work being done by him at the time of hearing was evidence to be considered in connection with all the other evidence. (*McGhee v. Sinclair Refining Co.,* 146 Kan. 653, 659, 73 P. 2d 39.) Furthermore, Dr. Hensley's testimony that claimant was not one hundred percent disabled, but could do light work, was evidence which could be given consideration, even though the doctor may not have employed the proper test for rating the extent of the disability. In our opinion, the trial court's finding that claimant is not totally disabled from performing all the work he was able to do before his injury is within the evidence shown by the record, and the court's rating of seventy-five percent disability may not be disturbed.

We find no error in judgment of the court below and the same is affirmed.