No. 32,260

William Masoner, *Appellee*, v. Wilson & Company, *Appellant*.

(44 P. 2d 265)

Opinion filed May 4, 1935.

*Arthur J. Stanley, Arthur J. Stanley, Jr., J. E. Schroeder* and *C. C. Keller*, all of Kansas City, for the appellant.

*A. M. Etchen,* of Kansas City, for the appellee.

The opinion of the court was delivered by

Harvey, J.: This was a workmen's compensation case. Claimant had been in the employ of respondent about eleven years as a track laborer. On March 22, 1934, while in the regular course of his employment, a piece of steel about the size and thickness of a dime flew into his left eye, cutting and severing the eyeball. He was taken to the hospital, where an eye specialist removed the eye, and soon thereafter put in a glass eye, and he was able to leave the hospital April 9. Respondent's representative advised him that under the compensation law (R. S. 1933 Supp. 44-510 [3] [c] [15]) he was entitled to sixty per cent of his average weekly wages for 110 weeks, as for a scheduled injury. The amount was computed and paid, with five per cent deduction, and claimant executed a release of the employer from further liability. On May 17, 1934, claimant filed with the compensation commissioner a petition to set aside the release on the grounds that he had been induced to execute it because of misrepresentation made to him by respondent's representative, mutual mistake, and that the amount of compensation paid was grossly inadequate, contending that he was entitled to compensation for total permanent disability for 415 weeks. On the same date he filed his written claim for compensation. Respondent

filed the release with the compensation commissioner on June 13. After a hearing and on June 30 the commissioner made an order disapproving the final release in order that he might determine the adequacy of the compensation, but in doing so specifically found that no fraud was practiced on claimant to procure his execution of the release, and that there was not a mutual mistake of the parties. There appears to have been no appeal from this order, but perhaps that is of no special consequence since the principal question involved here is the amount of compensation claimant was entitled to receive. On July 7 the compensation commissioner made findings and an award on the claim for compensation and denied claimant further compensation. He appealed to the district court. That court considered the evidence and allowed claimant compensation for total permanent disability for 415 weeks, less the amount previously paid. The employer has appealed.

In the trial court claimant contended that he should be compensated for total permanent disability under the compensation law, and not for a scheduled injury, for the reason that he was industrially blind in the right eye, hence that the loss of his left eye made him totally and permanently disabled. The trial court found and rendered judgment in accordance with that view. The evidence tending to support the finding is as follows: Claimant testified that after the loss of his left eye he found he could see very little with his right eye. He could not see to drive a nail with a hammer, or to recognize a friend who was more than six feet away, or to walk about without stumbling, and could not see enough to do any work. An eye specialist who tested his right eye a few days before the hearing before the commissioner found his vision at that time was 12/200. This is less than ten per cent vision and is tantamount to industrial blindness. An examination of the eye did not disclose it to be diseased in any way, but it was a "farsighted" eye. Obviously it had been that way for many years, perhaps from birth. There is some testimony as to how much that might be improved by the use of glasses. While there appears to be some lack of harmony in the testimony of the two eye specialists who testified on that point, it appears that with a very strong lens he might be able to have 40 per cent vision for close work and 76.5 per cent for distance. Quite a little is said in the briefs as to whether claimant's industrial vision should be computed with or without the use of glasses. The decisions from other states, some of which have a statute on the

point, are not in harmony. Many of the cases are collected in *Kelley v. Prouty et al.*, 30 P. 2d 769 (Ida.), which appears to make the distinction that if the industrial vision of an injured eye is being determined the use of glasses should not be considered, but if one eye is entirely lost and the industrial vision of the other is being determined the use of glasses should be considered. We are cited to no specific provision of our statute on the question. Perhaps it would be governed by the principle which underlies our decisions to the effect that under some circumstances an injured workman should submit to an operation (*Gentry v. Williams Brothers*, 135 Kan. 408, 10 P. 2d 856), although this point is not suggested. We do not deem it necessary to decide the point in this case, for the trial court was of the opinion that the type of glasses claimant would be compelled to wear would be such a handicap that they could not enable him to engage in industry. Respondent offered no evidence to the effect that claimant would be industrially useful with glasses. He had inquired of respondent's representative about his job and was told he had no job. He was not told that he would be given work if he had glasses, nor did respondent offer to provide him glasses. The trial court therefore found that the accident which claimant received resulted in a total permanent disability. There is substantial evidence to sustain this finding.

Appellee concedes an error in the computation of the judgment of the trial court. There should have been an allowance on the award as though the right eye had previously been injured by accident in an industry, and 110 weeks should have been deducted from the 415 weeks for permanent total disability. (R. S. 1933 Supp. 44-510 [3] [c] [24]; *Stevens v. Kelly-Carter Coal Co.*, 140 Kan. 441, 37 P. 2d 48.)

The judgment of the trial court will be modified by reducing the award from $3,465.40 to $2,237.80, and as so modified it is affirmed.