No. 41,837

Jackie N. Place, *Appellee*, v. Falcon Seaboard Drilling Company, and The Standard Insurance Company, *Appellants*.

(350 P. 2d 788)

Opinion filed April 9, 1960.

*Fred A. Beaty,* of Wichita, argued the cause, and *Sidney J. Brick, W. A. Bonwell, Jr.,* and *Richard H. Rumsey,* all of Wichita, were with him on the briefs for appellants.

*James M. Caplinger,* of Greensburg, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

Fatzer, J.: In this workmen's compensation case the respondent and its insurance carrier have appealed from the findings and judgment of the district court that the claimant sustained personal injury arising out of and in the course of his employment with the respondent, suffering 80 percent permanent partial disability.

The principal question presented is whether the award and judgment of the district court are based upon substantial evidence. In other words, whether the evidence showed any casual relation between the injury and the employment. Two other contentions are made: first, whether an objection by the appellants to certain medical testimony of the claimant should have been sustained, and second, whether the code of civil procedure should be applied in workmen's compensation proceedings so as to limit proof of claimant's disability to injury stated on the claim for compensation.

It is unnecessary to cite the many authorities of this court to the effect that whether disabling injuries caused by accidents arising out of and in the course of employment are permanent in nature and partial in character, and if so, to what extent and duration the physical efficiency of the workman has been impaired, is a question of both law and fact to be determined by the workmen's compensation commissioner and the district court on appeal. Upon appellate

review, this court is limited to questions of law (G. S. 1959 Supp. 44-556), which, in the final analysis, means that its duty is to de-termine whether the findings of the district court are supported by substantial, competent evidence, keeping in mind, however, that the workmen's compensation commissioner and the district court on appeal have been designated within the limitations of the Workmen's Compensation Act to determine the degree of impair-ment, the existence, extent and duration of which is a question of fact for determination by the district court. In determining the question of law, this court is required to review all the testimony in the light most favorable to the prevailing party below, and if, when so considered, the record contains any evidence which supports the judgment of the district court, that judgment must be affirmed.

In light of the foregoing rule, we summarize the pertinent testi-mony: The claimant was employed by the respondent as a "rough-necking floor hand." On August 22, 1957, while helping another member of the drilling crew lift a rack, weighing approximately 450 pounds, claimant suffered a catch in his low back and they had to lay the rack down. He testified his back "just caught"; that he had a burning sensation and could not straighten up; that after resting awhile he could straighten up. He continued to work until August 29, 1957, but his back kept getting worse. On the latter date he went to see Dr. Waldorf, at Greensburg, Kansas, who gave him a shot and diathermy treatment; he returned the next day and the same treatment was administered. On Sunday, August 31, 1957, the claimant could not get out of bed without help and he was admitted to the Kiowa County Hospital. Prior to his injury on August 22, 1957, the claimant had never experienced any trouble with his back.

The claimant was in the hospital for nineteen days where he received medicine for constant pain, diathermy treatments, and was placed in a pelvic traction in an attempt to reduce the pain. His condition was diagnosed as a strain in the low back, and spon-dylolisthesis was indicated by x-ray.

The claimant lived in Chandler, Oklahoma, and wanted to re-turn to his home. Dr. Waldorf was reluctant to release him, but did so only upon the condition that he would go directly to another doctor in Oklahoma. The claimant's wife drove him home and the only way he could ride was to lie down in the back seat.

The insurance carrier was contacted and an appointment was made with Dr. Henry J. Freede, an orthopedist, in Oklahoma City.

On September 21, 1957, Dr. Freede was of the opinion the claimant had suffered a lumbo sacral strain and recommended the continued use of the medicine and heat application prescribed by Dr. Waldorf. Dr. Freede instructed the claimant to return in ten days. However, in three days the claimant was directed by the insurance carrier to report to Dr. Freede's office. When the claimant reported, Dr. Freede asked him why he was there and claimant told him the insurance company had requested him to come. The doctor then asked, "are you trying to get a settlement out of them?" The claimant replied that he was not interested in a settlement and only wanted to secure proper medical treatment to be relieved of his pain. Dr. Freede called the insurance carrier which stated it was sending a representative to his office. Claimant waited several hours and no one appeared. Three days later the insurance carrier advised the claimant that Dr. Freede had changed his opinion and now felt claimant's temporary total disability had ended; that there was no permanent disability resulting from his injury, and that he could return to work. Claimant then made use of the professional services of Dr. Seelig, his home town doctor, in an attempt to reduce the pain.

The claimant made timely claim for compensation and stated on the form provided for the workmen's compensation commissioner that the nature and extent of the injury to his back was diagnosed as spondylolisthesis. After filing the claim, the insurance carrier immediately began making weekly compensation payments to claimant.

The insurance carrier requested the claimant to submit to a myelograph which would necessitate the drawing off of some spinal fluid and the injection of an iodine fluid to determine by x-ray whether there was a back injury. Claimant was reluctant to consent as doctors had advised him such tests in the lumbar area were of no value and were dangerous to the body. However, desiring to reduce the pain and suffering, the claimant consented and a Dr. Rutledge of Oklahoma City ran the myelograph and informed claimant there was no injury to his back.

Claimant again went to Dr. Seelig who prescribed cortisone shots and taped his back and ordered a wide brace which tended to give him relief.

Later, the insurance carrier requested the claimant to submit to a physical examination by Dr. Charles K. Wier, of Wichita, which the claimant did in April, 1958. Dr. Wier was of the opinion an

exploratory operation should be performed to determine whether claimant's pain was from a definite back injury. At the request of the insurance carrier, the claimant entered a hospital in Wichita and submitted to the back operation on May 20, 1958. Dr. Wier testified he found no ruptured disc but that around the nerve root between the fourth and fifth lumbar on the left "numerous adhesions were present between the dura and the ligamentum flava," which very likely had been the area of claimant's trouble, also, that other adhesions were found around the nerve root. He further testified that due to the instability between the fourth and fifth lumbar he did a typical Hibbs fusion in that area. On December 1, 1958, he examined the claimant and released him for light standing-up desk work, and on December 21, 1958, he advised the insurance carrier he was of the opinion the claimant had a 15 percent partial permanent disability.

Between the date of claimant's injury on August 22, 1957, and the date of the hearing on February 17, 1959, claimant has been unable to work. About two weeks prior to the hearing he tried to assist a carpenter as a helper, without pay, to see if he was employable. After being on his feet a couple of hours he could "hardly go" and the next morning he could "hardly get out of bed." The claimant has an Eighth Grade education and has always done farm work or common labor. Since his injury he has lost 25 pounds in weight, and can only bend forward far enough to touch his knees, and in doing so, he experiences severe pain in the low back.

Dr. Waldorf testified by deposition for the claimant and stated that following his examination and treatment at the Kiowa County Hospital in August and September, 1957, he made a complete examination of him on February 16, 1959; that claimant had a marked limitation in all back motion and his reflex changes were within normal limitations except for the Achilles' reflex which was absent on both sides. He testified that in his opinion the claimant had a definite loss of motion in the low back because of the straining injury which he had. Upon direct examination he testified:

"Q. What do you feel was the cause of the patient's low-back pain? A. It is usually a trauma or strain, lifting, or catch in the back. Q. Would you have an opinion, Doctor, in this case, concerning the claimant as to whether or not the causation of this was his lifting something heavy on the job? A. I think that was the precipitating cause of this pain. Q. In other words, your opinion is that this was the causation of his trouble? A. Yes."

He further testified that the adhesions around the nerve root between the fourth and fifth lumbar are usually caused from irritation

and injury and that if there was enough damage to the nerve root it would not be done away with a Hibbs fusion; that a fusion usually will eliminate a lot of the trouble and make the back better, but in his opinion the claimant's back was worse in February, 1959, than it was when he was in the hospital at Greensburg in September, 1957, and that claimant had an 80 percent disability in performing manual labor, which rating was based upon the type of work the claimant had done in the past and his education qualifications. Upon cross-examination, in answer to a question whether claimant would recover from his disability, he stated,

"I wouldn't predict. I can't say. In years he might. He might have this back the rest of his life. I can't say."

Without detailing all of the medical testimony, we think there was substantial competent evidence to sustain the award and judgment of the district court.

The contention of appellants with respect to an objection interposed during the taking of Dr. Waldorf's deposition is not well taken. When that deposition was taken the appellants stated they would object to a question asked Dr. Waldorf on direct examination when the deposition would be read before the workmen's compensation commissioner. The question called for Dr. Waldorf's opinion as to whether claimant had permanent disability. However, when the deposition was presented, appellants notified the claimant that no objection would be interposed. That question was not raised until the claimant appealed to the district court at which time, the record indicates, appellants sought to impose an objection which was not considered by the district court.

It has been held that the jurisdiction of the district court in compensation cases is simply its power to grant or refuse compensation, or to increase or diminish any award made by the commissioner as justice may require. The district court may not grant a trial *de novo* nor hear new evidence, but takes the case on the transcript of the proceedings had before the workmen's compensation commissioner. (*Fougnie v. Wilbert & Schreeb Coal Co.*, 130 Kan. 410, 286 P. 396; *Employers' Liability Assurance Corp. v. Matlock*, 151 Kan. 293, 298, 98 P. 2d 456; *Attebery v. Griffin Construction Co.*, 181 Kan. 450, 461, 312 P. 2d 598.)

The appellants next contend they were required to change their position at the hearing because the claimant stated in his claim

for compensation that the injury to his back was diagnosed as spondylolisthesis, which they assert is congenital in character; that the claim for compensation narrowed the issue and the extent of claimant's disability, and that his evidence at the hearing of a traumatic condition caused by a strain to his low back was at variance with his claim, citing 41 Am. Jur., Pleading, § 65, p. 334.

It is well settled that a written claim for compensation prescribed by G. S. 1959 Supp. 44-520a need not take on any particular form so long as it is in fact a claim. (*Fitzwater v. Boeing Airplane Co.*, 181 Kan. 158, 164, 309 P. 2d 681.)

This court has often reiterated that the workmen's compensation law is a comprehensive act and covers every phase of a workman's right to compensation and the procedure for obtaining it, and that it is not warranted in borrowing rules from the code of civil procedure not included in the compensation act (*Employers' Liability Assurance Co. v. Matlock*, supra; *Taylor v. Taylor*, 156 Kan. 763, 766, 137 P. 2d 147). See, also *Snopkoski v. Home Riverside Coal Mines Co.*, 120 Kan. 747, Syl. ¶ 2, 244 P. 849, and *Taylor v. Armour & Co.*, 186 Kan. 51, 348 P. 2d 632.

In compensation cases the issues are resolved at the commencement of the hearing by stipulations of the parties, and prior to the hearing the employer and the insurance carrier are in constant contact with the claimant and receive copies of all medical reports. At the hearing they have every opportunity to hear all the testimony in support of the claim for compensation and upon the close of the claimant's case, may proceed to establish any defense they may have.

Under the facts and circumstances of this case, we cannot say that, because the claimant stated in his claim for compensation that the injury to his back was diagnosed as spondylolisthesis, the judgment of the district court on appeal was prejudicial or erroneous since the medical testimony was more than ample to sustain such award and judgment.

Other points have been briefed by the parties but in view of the conclusions just announced it is unnecessary that we discuss and decide them.

The appellants have not made it to affirmatively appear there was error committed and we are required to enter an order affirming the judgment of the district court.

It is so ordered.