No. 45,500

Glenn H. Piper, *Appellant*, v. Kansas Turnpike Authority and Phoenix Assurance Corporation, *Appellees*.

(451 P. 2d 152)

Opinion filed March 8, 1969.

*George E. McCullough*, of Topeka, argued the cause, and *W. L. Parker, Jr., Robert B. Wareheim, Reginald LaBunker* and *James L. Rose*, of Topeka, were with him on the brief for appellant.

*George V. Allen*, of Lawrence, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

FATZER, J.: This is a workmen's compensation case and is before this court the second time as a result of the appeal of the claimant, Glenn H. Piper, from the findings and judgment of the district court entered on July 3, 1968.

The first appeal, *Piper v. Kansas Turnpike Authority*, 200 Kan. 438, 436 P. 2d 396, involved the question of the district court's refusal to permit the claimant the right to use corrective lens in determining the loss of vision to the claimant's left eye. In reversing the district court's judgment, and under the facts and circumstances presented, this court held that where an injured workman sustains the loss of an eye industrially blind with naked vision, but normal with correction, the valuation of industrial visual loss, for the purpose of determining the amount of compensation due, shall be based on visual efficiency findings which are made with the aid of corrective lenses; the loss being the difference between the corrected vision before the injury and the corrected vision after the injury.

Based upon the foregoing holding, the court's opinion stated:

". . . This requires a reversal of this cause. Since the district court has not determined from the record whether the claimant's disabling injury is permanent in nature, and if so, whether such impairment is total or partial in character, it is necessary to remand this case to the district court to make findings based upon the evidence and determine the amount of compensation, if any, due the claimant.

"In reviewing the record, the district court should be guided by what was said and held in *Polston v. Ready Made Homes*, 171 Kan. 336, 232 P. 2d 446, and *Justice v. Continental Can Co.*, 174 Kan. 539, 257 P. 2d 564, and whether, as a result of the accidental injury to the claimant's left eye on December 13, 1963, together with the previous disability of the claimant's right eye, he became totally disabled." (l. c. 445.)

The cause was reargued before the district court and on July 3, 1968, it concluded that *Polston v. Ready Made Homes*, 171 Kan. 336, 232 P. 2d 446, and *Justice v. Continental Can Co.*, 174 Kan. 539, 257 P. 2d 564, applied only to total disability, and determined the claimant did not suffer total disability and found he was limited to an injury to the one eye without regard to the eye that had been eviscerated prior to the accident. The findings of the district court are quoted *in toto:*

"1. That the claimant, on December 13, 1963, sustained an accidental injury to his left eye and a hernia and such injuries rose out of and in the course of his employment with the respondent.

"2. That the two subsequent retinal detachments sustained by the claimant were connected with the original accident.

"3. That claimant's average weekly wage was $131.77.

"4. That as a result of an operation performed on May 25, 1963, the claimant's right eye was eviscerated prior to December 13, 1963, which evisceration destroyed all sight therein.

"5. That immediately prior to December 13, 1963, vision in claimant's left eye was correctible to Snellen 20/20 for distant vision and Jaeger-1 for near vision.

"6. That subsequent to the operations made necessary by the additional retinal detachments sustained by the claimant, his vision of the left eye was corrected to Snellen 20/70 for distance and Jaeger-7 for near vision. Applying Director's Rules, claimant's remaining visual acuity at 20 feet measured as 20/70 is a loss of 45% while Jaeger-7 is a loss of 37.625% and giving twice the weight to the short measurement results in a figure of 75.35%, to which is added the 45% loss for distance, making a total 120.35%. This figure, divided by 3, gives a final figure of 40.11% as claimant's permanent partial loss of vision of the left eye.

"7. That claimant denies he is totally disabled as a result of the accident of December 13, 1963, and the subsequent retinal detachments, and claimant's doctor confirms this. Therefore, it is found that he is not totally disabled.

"8. That claimant's doctor's report indicates that claimant can do some types of work, and this condition has existed since June 6, 1964, and hence he is employable.

"9. That claimant suffered temporary total disability from December 13, 1963, to June 6, 1964, amounting to 25 weeks of which 24 weeks is compensable at the rate of $42.00 per week.

"10. That claimant did not coincidentally and industrially sustain a permanent partial visual efficiency loss to each eye, and therefore Director's Rule 51-8-7 is not applicable.

"11. That although industrial blindness existed in the right eye prior to the injury, claimant has not sustained complete loss of vision of the left eye, and therefore Director's Rule 51-8-9 is not applicable.

"12. That the injury and disability suffered by the claimant is covered by K. S. A. 44-510 (3) (c) (17) and (21), hence the provisions of K. S. A. 44-510 (3) (c) (24) are not applicable.

"13. That inasmuch as claimant admits he is not totally disabled, and this Court finds that the claimant is not permanently totally disabled, therefore the provisions of K. S. A. 44-510 (3) (c) (26) are not applicable.

"14. That claimant sustained no permanent disability as a result of the hernia received in the accident in question.

"15. That respondent and insurance carrier have paid compensation for the period of 64 weeks at the rate of $42.00 per week, of which 24 weeks was for the temporary total disability of the claimant.

"16. That claimant has suffered permanent partial loss of vision of the left eye of 40.11%, for which he is due compensation for 48.13 weeks at the rate of $42.00 per week, in the total amount of $2,021.46, of which respondent and insurance carrier have paid 40 weeks at $42.00 per week, in the total amount of $1,680.00, and there remains due the sum of $341.46.

"17. That respondent and insurance carrier are responsible for medical attention incurred by the claimant as provided in Director's Order of the 20th day of June, 1966, and made a part hereof as if fully set forth herein."

The claimant's evidence consisted of his own testimony and that of Dr. James E. Hill, a highly qualified ophthalmologist. It is unnecessary to summarize the evidence before the district court since that was done in the first appeal, and the reader is referred to that opinion. However, to bring the question presented into proper focus, a brief resumé of the condition of both of the claimant's eyes and the loss of visual acuity, follows:

On September 15, 1962, the claimant underwent a series of operations for the removal of cataracts from both eyes. The operation on the right eye was not successful, the eye became painful, and on May 25, 1963, it was eviscerated which removed all vision. The operation on the claimant's left eye was successful, and with the aid of corrective lens the left eye was corrected to 20/20 for distant vision and Jaeger-1 for near vision, the equivalent of Snellen 14/14.

Thereafter, and on December 13, 1963, and in the course of his employment, the claimant sustained the first of a series of retinal detachments to his left eye, which were corrected by a series of operations. With the aid of corrective lens the left eye could be corrected to Snellen 20/70 and Jaeger-7, or a permanent partial loss of vision to the left eye of 40.11 percent. The claimant can now only identify a person at twelve feet and can only read with the aid of a magnifying glass. The medical testimony was that claimant's eye was quiescent, and its condition could not be expected to improve.

At the hearing on remand and on July 3, 1968, the district court found that the claimant denied he was totally disabled as a result of the accidental injury and the subsequent retinal detachments; that the claimant's doctor confirmed that condition by his testimony; that the claimant sustained a permanent partial disability to his left eye of 40.11 percent by the use of corrective lens; that based upon the doctor's medical report indicating the claimant could do some types of work, the claimant was employable, and that the provisions of K. S. A. 44-510 (3) (c) (17) and (21) were applicable in determining the amount of compensation due the claimant. In harmony with its findings, the district court entered judgment against the Kansas Turnpike Authority and its insurance carrier in the amount of $341.40 remaining due for 40.11 percent permanent partial loss of vision of the left eye and medical expenses paid by the claimant.

In making its findings and rendering judgment, the district court distinguished the instant case from the *Polston* and *Justice* cases, on the ground the claimants in those cases were found by the district court to be permanently totally disabled, whereas here the claimant was found to be only partially disabled. The conclusion that the claimant was not totally disabled was based upon the finding he was employable and his denial he was totally disabled.

As indicated, the district court found that the disability suffered by claimant was a scheduled injury and covered by K. S. A. 44-510 (3) (c) (17) and (21). It is unnecessary to quote the foregoing subsections of the Workmen's Compensation Act since it is clear the legislature intended the schedule for compensation therein provided was for the loss of, or partial loss of, the sight of *one eye*. Where a workman has previously lost the sight of one eye and sustains an industrial injury to his remaining eye resulting in the loss of visual acuity, he does not sustain the loss of, loss of use, or loss of vision in *one eye*, but, rather, sustains the loss of vision itself. Thus, where an injury produces the loss of vision such as the record discloses the claimant lost by reason of the evisceration of his right eye and the loss of 40.11 percent vision in his left eye, he sustains the loss of binocular vision which is not provided for in the schedule prescribed in 44-510 (3) (c) (17) and (21).

This court is committed to the rule of liberal construction of the Workmen's Compensation Act in order to award compensation to workmen where it is reasonably possible to do so and to make the legislative intent effective and not to nullify it. (*Bright v. Bragg*, 175 Kan. 404, 264 P. 2d 494.) Since the claimant's injury is not compensable as a scheduled injury pursuant to 44-510 (3) (c) (17) and (21), we look to other provisions of the Act to determine the manner and amount of his compensation for the loss of binocular vision. For reasons hereafter stated, we are of the opinion that under the record in this case, the district court erred in not awarding compensation pursuant to 44-510 (3) (c) (26) where the effect of the industrial injury together with the previous disability resulted in total permanent disability to the claimant. That section reads:

"If a workman has suffered a previous disability and received a later injury, the effects of which together with the previous disability shall result in total permanent disability, then and in that event the compensation due said workman shall be the difference between the amount provided in the schedule of this section for his prior injury and the sum total which would be due said employee for such total disability computed as provided in section 44-511 of

the General Statutes Supplement of 1961 and any amendments thereto, but in no case less than seven dollars ($7) per week nor more than forty-two dollars ($42) per week."

As used in the statute, total permanent disability of a workman results where the loss of visual acuity to the remaining eye is of such a degree that his ability has been impaired to procure in the open labor market, and to perform and retain, work of the same type and character he was able to perform before he was injured. (*Puckett v. Minter Drilling Co.*, 196 Kan. 196, 410 P. 2d 414.) All our cases involving eye injuries to claimants, such as here presented, with the exception of *Moore v. Western Coal and Mining Co.*, 124 Kan. 214, 257 Pac. 724, which was expressly overruled in *Stevens v. Kelly-Carter Coal Co.*, 140 Kan. 441, 37 P. 2d 48, are to this effect.

The *Stevens* case construed the provisions of the Act which is now 44-510 (3) (*c*) (26). There, the claimant suffered an accidental injury to his left eye, and had been almost blind in his right eye since childhood. Compensation was awarded pursuant to what is now 44-510 (3) (*c*) (26). The award was affirmed by the district court and there was no appeal. Later the employer sought modification of the award. In denying the relief sought, it was said that neither the examiner, nor the district court, nor the supreme court could say from the record that the disability of the workman had diminished. In the opinion it was said:

". . . Here the accident causing the injury did not really injure both eyes. It only injured one eye. The total disability is not on account of the injury alone. It is on account of the injury together with the condition of the other eye, which is not due to the injury at all." (l. c. 444.)

In *Masoner v. Wilson & Co.*, 141 Kan. 882, 44 P. 2d 265, the sight of the claimant's right eye was tantamount to industrial blindness which existed from the date of his birth. He sustained an injury to his left eye in the course of his employment and with very strong lens he might be able to have 40 percent vision for close work and 76.5 percent for distance. The award was based upon R. S. 1933 Supp. 44-510 (3) (*c*) (24) which is now K. S. A. 44-510 (3) (*c*) (26). It was stated the district court was of the opinion that the type of glasses claimant would be compelled to wear would be of such a handicap that they could not enable him to engage in industry. It was further stated:

". . . Respondent offered no evidence to the effect that claimant would be industrially useful with glasses. He had inquired of respondent's representa-

tive about his job and was told he had no job. He was not told that he would be given work if he had glasses, nor did respondent offer to provide him glasses. The trial court therefore found that the accident which claimant received resulted in a total permanent disability. There is substantial evidence to sustain this finding.

". . . There should have been an allowance on the award as though the right eye had previously been injured by accident in an industry, and 110 weeks should have been deducted from the 415 weeks for permanent total disability. . . ." (l. c. 884.)

The cases of *Polston v. Ready Made Homes*, supra, and *Justice v. Continental Can Co.,* supra, are to the same effect, awarding compensation pursuant to what is now 44-510 (3) (c) (26) based upon a finding of permanent disability of the workman.

The finding of total permanent disability in each of the foregoing cases was based upon a workman's previous loss of sight of one eye and of a subsequent industrial injury to the remaining eye resulting in the loss of visual acuity to such a degree that the workman's ability had been impaired to procure in the open labor market, and to perform and retain, work of the same type and character he was able to perform before he was injured.

This brings us to the question, is there substantial evidence in the record to support the district court's finding that the claimant was employable. In determining this question, the court has examined the record in the first appeal of this case as well as the record in the instant appeal. In the first appeal, the claimant's narrative statement of the evidence, to which the appellees expressed no objection, was that the claimant was fully able to perform all his work prior to the fall and the detachment of the retina which was directly traceable to the fall, and after his fall he became unemployable because of the loss of vision in his left eye. Based on that evidence, this court said:

"Prior to his injury, the claimant had corrected normal vision in his left eye and he was able to perform his work in a usual and satisfactory manner . . . Following the injury and the ensuing operations, he sustained a partial loss. of vision in the left eye and all means of correcting the eye to normal vision. *He is completely unable to perform the work he was doing prior to the injury,.* and can only see figures ten to twelve feet distant and is required to read with the aid of a magnifying glass . . ." (l. c. 443.) (Emphasis supplied.)

The record in the instant appeal was prepared in accordance with Rule No. 6 (c) of this court. The claimant filed with his designation a narrative statement of the testimony he designated to be included in the narrative form to the effect that claimant was.

fully able to perform all his work prior to the fall and after the fall he became unemployable because of the loss of vision in his left eye. The appellees agreed to the claimant's statement of the facts in this case, except they objected to his narrative testimony that after the fall and injury in question, the claimant became unemployable because of his loss of vision in his left eye. Pursuant to Rule No. 6 (c) the appellees designated the following as the narrative statement of Dr. Hill's testimony with respect to the employability of the claimant:

"Claimant's visual acuity is not adequate for many things; however, he is able to move about adequately and to read with a magnifying glass."

And,

"At the present time Mr. Piper's eye is quiescent, no evidence of retinal detachment at this time. Patient's visual acuity is not adequate for many things. However, he is able to move about adequately and to read with a magnifying glass . . ."

While the record in this appeal contains question and answer testimony of the claimant, no question and answer testimony of Dr. Hill was abstracted, and with the exception of his statement that the condition of the claimant's eye could not be expected to improve, the foregoing is all of the medical testimony dealing with the claimant's employability. It should also be noted that Dr. Hill's report referred to by the district court in its finding No. 8 to the effect that such report indicates the claimant can do some types of work likewise was not included in the record and affords this court no opportunity to review the evidence in support of that finding.

The claimant was maintenance foreman on one of the turnpike crews and his main duties were to fill holes, clean out ditches, remove dead animals and obstructions from the highway. He supervised all maintenance and care of utility problems at the service areas. He had an office in Wellington where he performed the duties of making reports, keeping time of the men and of materials used in maintenance procedures. After his injury and with the aid of corrective lens, he could only identify persons at twelve feet distance and was required to read with the aid of a magnifying glass.

This court is of the opinion the record presented by both parties does not support the district court's finding that the claimant was employable. On the contrary, it clearly discloses that the claimant was fully able to perform all his work prior to the injury and because of the loss of vision in his left eye, his ability has been

impaired to procure in the open labor market, and to perform and retain, work of the same type and character he was able to perform before he was injured. (*Puckett v. Minter Drilling Co.,* supra.) In answer to the question, "[a]re you able to perform any work at the present time," the claimant answered, "[n]o, sir." The claimant stated in his brief the uncontradicted testimony was that he was not working, that he could not return to his previous work, and had not worked since the date of the accident.

Neither do we read the record that the claimant contended he was not totally disabled. The claimant contended in the district court that because of the permanent loss of vision in the left eye of 40.11 percent and being totally blind in his right eye, he was entitled to 55.08 percent general bodily disability pursuant to Director's Regulation No. 51-8-9 of not to exceed the statutory limit of 415 weeks; that his average weekly wage was $131.77; that 55.08 percent of this was $72.58 and 60 percent of which was $44.14; that the maximum compensation allowed under the Act is $42 per week and that the claimant should be awarded compensation for 415 weeks less 62 weeks already paid at the rate of $42 per week. The contention was the result of the misapplication of the facts of the case to rules of the Director of Compensation and pertinent provisions of the Workmen's Compensation Act, and in effect was an attempt to avoid the deduction of 120 weeks of compensation provided in the schedule for his prior injury. (*Poehlman v. Leydig,* 194 Kan. 649, 400 P. 2d 724.) A claimant in a workmen's compensation case should be awarded compensation under the pertinent provisions of the Act as the facts entitle him to even though he has misconceived their legal effect.

The record discloses the claimant was unemployable; that the condition of his left eye could not improve and that he was unable to procure work of the same type and character he was able to perform prior to the injury. On the record, the district court should have entered judgment in favor of the claimant pursuant to 44-510 (3) (*c*) (26) and based the award on 415 weeks less 120 weeks, or 295 weeks at the rate of $42 per week, less compensation already paid. The judgment is reversed.

FONTRON, J., concurring: I agree with the court's disposition of this case and should like expressly to say that in my judgment the record contains no evidence to support paragraphs seven, eight and thirteen of the trial court's findings. Nowhere in his testimony do I

find any denial by claimant that he is totally disabled, as the court found in finding seven, or any admission on his part that he is not totally disabled, as set forth in finding thirteen.

The claimant's testimony was this: that he could identify somebody ten or twelve feet away and, in response to the question "Are you able to perform any work at the present time," he responded "No sir." This testimony certainly does not rise to the eminence of a denial of total disability, or of an admission of less than total disability.

Neither am I able to find anything in the record, which is scanty to say the least, to justify findings seven and eight as they relate to the doctor's testimony. Dr. Hill testified, according to the respondents' own narration, that "claimant's visual acuity is not adequate for many things; however, he is able to move about adequately and to read with a magnifying glass." In my judgment this is no indication on the part of Dr. Hill that claimant can do some type of work, as the court said in finding eight, or that Dr. Hill confirmed any supposed denial of total disability by the claimant, as finding seven suggests.

In all fairness, I think it must be said that any man who can identify people at distances of but ten or twelve feet, and who requires a magnifying glass to read, would be wholly unable to obtain and to retain work of a character that claimant was performing before his injury, unless there was specific evidence to the contrary. There is no such evidence in this record.

FROMME, J., dissenting: I cannot reconcile our previous holding in *Piper v. Kansas Turnpike Authority*, 200 Kan. 438, 436 P. 2d 396, with the present decision of this court and I respectfully dissent.

The claimant had lost one eye from a non-industrial incident, a cataract operation, prior to the injury which is the basis for the present award of compensation. The present injury arose from a retinal detachment in his remaining eye caused by a fall while at work. The injury resulting in disability was an injury to one eye. When the hearing was held before the examiner claimant introduced evidence to show a percentage loss of vision in his one good eye. The claimant testified he could identify another person twelve feet away and could read with the aid of a magnifying glass. When he appeared before the examiner he said he was not able to perform any work *at the present time*. He did not explain this statement

further. He had worked as a foreman supervising a maintenance crew on the highway. It does not appear whether he participated in the actual physical work or merely supervised the crew. He made reports on the work and kept a time schedule on the men who worked under him. The treating doctor testified he was able to do some types of work.

No evidence was introduced indicating claimant could not return to his previous job. There was no evidence that he was unable to procure work of the same or similar nature. The testimony that he could identify persons at twelve feet and could read with a magnifying glass was for the purpose of translating the medical terms "Snellen 20/70" and "Jaeger-7," into intelligible terms. It did not indicate general disability to function at a particular job.

In compensation cases the issues are resolved at the hearing before the examiner. The parties present their evidence. The record of evidence is then complete for review. On appeal to the district court it decides the issues on the transcript of evidence taken before the examiner after review by the workmen's compensation director. The district court cannot grant a trial *de novo*. (*Place v. Falcon Seaboard Drilling Co.*, 186 Kan. 523, 350 P. 2d 788; *Phillips v. Helm's Inc.*, 201 Kan. 69, 439 P. 2d 119.) The district court on review weighs the evidence upon the record made before the examiner. (*Landes v. Smith*, 189 Kan. 229, 368 P. 2d 302.)

The same transcript of evidence was before this court on the first appearance of this case. We properly held that this court was not authorized to determine disputed questions of fact. The extent and degree of disability remained a question of fact to be determined by the trier of the fact. (*Knight v. Hudiburg-Smith Chevrolet, Olds., Inc.*, 200 Kan. 205, 435 P. 2d 3; *Casebeer v. Casebeer*, 199 Kan. 806, 443 P. 2d 399.)

We stated in *Piper v. Kansas Turnpike Authority, supra:*

". . . Since the district court has not determined from the record whether the claimant's disabling injury is permanent in nature, and if so, whether such impairment is total or partial in character, it is necessary to remand this case to the district court to make findings based upon the evidence and determine the amount of compensation, if any, due the claimant." (p. 445.)

This determination of fact was the function of the district court. An appellate court does not make findings upon which an award of compensation is based. (*Fisher v. Rhoades Construction Co.*, 190 Kan. 448, 375 P. 2d 771.)

The trial court made the findings requested by this court and it was not required to accept the claimant's testimony as true. It could accept or reject portions of that testimony in arriving at its findings. The trial court found that claimant is not totally disabled.

The majority of this court has reviewed the evidence a second time and now says this evidence establishes total permanent disability as a matter of law. If this is true now it was true when the case first appeared and the case should not have been remanded to the trial court to make the findings. This is the same transcript and the same evidence which was previously examined.

The present majority opinion proceeds upon the false premise that unless there is substantial evidence to show the claimant could perform and retain work of the same type and character as he was able to perform before the injury he is totally and permanently disabled.

The claimant in a workmen's compensation case has the burden to establish his claim. (*Bender v. Salina Roofing Co.,* 179 Kan. 415, 295 P. 2d 662; *Ratzlaff v. Friedeman Service Store,* 195 Kan. 548, 407 P. 2d 513; *Meyers v. Consolidated Printing & Stationery Co.,* 201 Kan. 806, 443 P. 2d 319.) The extent and degree of disability is a necessary element of his claim.

The claimant presented his case before the examiner on the basis of a percentage of loss of use of his eye. The claimant later argued in the district court and on appeal to this court he was entitled to 55.08 percent of general body disability based upon rules of the director and upon K. S. A. 44-510 (3) (*c*) (24) and (26).

Director's Rule 51-8-7 in pertinent part reads:

"If a workman had *co-incidentally and industrially* sustained a permanent, partial visual efficiency loss to *each* eye, provided that he had not, at the same time, sustained any other permanent, partial industrial disability, the prescribed method of procedure for the computation of the percentage value of that workman's permanent, partial industrial efficiency loss is exemplified as follows: . . ." (Emphasis supplied)

Director's Rule 51-8-9 in pertinent part reads:

"Where there is *complete* loss of vision of one eye, due to an industrially incurred injury, and industrial blindness exists in the fellow eye, even if industrial blindness of the fellow eye is not due to an industrially sustained injury, that more recent and *complete* loss of the workman's only visual potent eye shall not be rated on the basis of the visual loss to a single eye, but shall be rated on the basis of a total permanent disability." (Emphasis supplied)

The examiner, director and the district court all found under the evidence that claimant's loss was partial and limited to one eye,

that he was employable and not totally disabled. Allowance was made for a partial permanent disability of a scheduled member.

In our previous opinion (*Piper v. Kansas Turnpike Authority, supra,*) this court said:

"Is the claimant to go uncompensated for his loss of vision? We think not. K. S. A. 44-510 (3) (c) (17) (21) provides for payment of compensation to an injured workman measured by a percentage of his average weekly wage for the loss of an eye, or the loss of sight of an eye, total or partial, attributable to a permanent injury. . . ." (p. 443)

The trial court made the findings requested based upon substantial evidence and applied the statute to arrive at the proper compensation due under K. S. A. 44-510 (3) (c) (17) and (21).

The claimant is attempting to persuade this court to allow him permanent partial general disability not provided in any part of the Act or the rules of the Director. To allow such disability in this case without evidence of general bodily disability would be to permit any person who has previously lost an arm or leg in a non-industrial occurrence and who sustains a small percentage permanent partial disability to his remaining member to recover under K. S. A. 44-510 (3) (c) (26).

This is the result which the legislature sought to avoid by the use of the qualifying words, "total permanent disability" in said statute and which the Director sought to avoid by the use of the word "complete" in Rule 51-8-9 and the words "coincidentally and industrially" in 51-8-7.

The rule of liberal construction cited in the majority opinion applies to construction of the statutes. It does not authorize this court to adopt a liberal attitude toward proof of disability, regardless of how deserving a claimant may be.

On appeal this court must view the evidence most favorable to the prevailing party below. This rule applies whether compensation has been allowed or denied and whether the appeal is by claimant or respondent. (*Elliot v. Ralph Construction Co.,* 195 Kan. 723, 726, 408 P. 2d 584.)

The claimant relies on four cases: *Polston v. Ready Made Homes,* 171 Kan. 336, 232 P. 2d 446; *Justice v. Continental Can Co.,* 174 Kan. 539, 257 P. 2d 564; *Stevens v. Kelly-Carter Coal Co.,* 140 Kan. 441, 37 P. 2d 48, and *Masoner v. Wilson & Co.,* 141 Kan. 882, 44 P. 2d 265. In all of these cases there was evidence of total permanent disability, the trial court found total disability existed and the application of K. S. A. 44-510 (3) (c) (24) and (26) was proper.

However, this is not true of the present case. Based upon the evidence or lack of it the trial court found claimant did not suffer total permanent disability. We are not justified in substituting our judgment for that of the trial court.

In addition I cannot agree that claimant's injury resulted in a loss of binocular vision. Binocular vision relates to vision from both eyes. Claimant did not have binocular vision at the time of his injury. Assuming, but not conceding, that a loss of vision may be more disabling to a person who has but one eye I cannot equate a percentage loss of vision to a percentage of disability without additional evidence on job limitation. The demands of the work determine the requisite visual acuity to perform that work. The extent of disability suffered because of partial loss of vision is a fact question.

The result reached in the majority opinion is inconsistent with *Piper v. Kansas Turnpike Authority, supra,* and is accomplished by disregarding the function of an appellate court.

I would affirm the lower court's judgment and award.

PRICE, C. J., and SCHROEDER, J., join in the foregoing dissent.