No. 46,397

Vernon George Crouse, *Appellant*, v. Wallace Manufacturing Company (Respondent) and Travelers Insurance Company, (Insurance Carrier), *Appellees.*

(486 P. 2d 1335)

Opinion filed July 16, 1971.

*Simeon Webb*, of Pittsburg, argued the cause and was on the brief for the appellant.

*Robert L. White*, of Pittsburg, argued the cause, and *J. Curtis Nettels*, of Pittsburg, was with him on the brief for the appellees.

The opinion of the court was delivered by

Schroeder, J.: This is an appeal by the claimant in a workmen's compensation case. The workmen's compensation examiner and the trial court awarded compensation to the claimant based upon a 65 percent loss of use of the right arm.

The claimant contends the award should be 50 percent permanent partial general disability to the body as a whole.

At issue on this appeal is the method for determining compensation due the claimant on the facts presented. It involves the interpretation to be given K. S. A. 1969 Supp. 44-510.

On the 16th day of January, 1970, the claimant sustained a personal injury by accident which arose out of and in the course of his employment. The injury was limited to the right arm which resulted in permanent partial disability of the right arm of 65 percent according to the finding of both the workmen's compensation examiner and the trial court. (No review by the director was requested and an order was entered approving the examiner's award.)

Prior to the accidental injury to the right arm, the claimant on September 5, 1963, sustained a nonindustrial injury to his left hand which resulted in a permanent partial disability of 60 percent to the left hand. The claimant's left hand was not injured in the accident with which we are here concerned.

Prior to the accidental injury to the right arm on January 16, 1970, the claimant was regularly and fully employed with the respondent herein, and on March 30, 1970, ten weeks and two days after the injury here in question, the claimant returned to his regular work. He testified:

"After I more or less recovered I went back to work in March, 1970.

"Q. But since you went back to work, why you worked, done your regular work, and done all your regular shifts whenever the plant was operating, haven't you?

"A. Yes, sir, whatever he would ask me to do, I would do it.

"Q. And you went back to working on the press machine, doing the same work that you were doing before the injury; isn't that right?

"A. Yes, sir.

"Q. And since the injury, why you have done whatever work was required out there, haven't you?

"A. Yes, sir, whatever they asked me to do."

The claimant's examining physician rated the disability to the right arm at 45 to 50 percent, and rated the prior injury at 60 percent disability of the left hand. He concluded by combining the two disabilities into a general bodily rating of 40 percent to the body as a whole.

The respondent's examining physician rated the disability to the right arm at 65 percent, and rated the prior injury to the left hand at 60 percent disability of the left hand, and concluded by combining the two disabilities into a general bodily rating of 50 percent to the body as a whole.

The trial court specifically found the prior injury resulted in a 60 percent loss of use of the left hand, and a 65 percent loss of use of the right arm as a result of the accidental injury on January 16, 1970, and that as a result of both of these injuries the claimant has a permanent partial general bodily disability of 50 percent. It is to be noted the trial court did not find total disability from the two injuries.

The trial court further found that as a result of the accidental injury on January 16, 1970, the claimant was temporarily totally disabled from January 16, 1970, to March 30, 1970, and thereafter the claimant continued to suffer a 65 percent permanent partial disability of the right arm.

The examiner and the trial court awarded compensation of 9.29 weeks for temporary total compensation from January 23, 1970, to March 30, 1970, payable at the rate of $49 per week, and adopted the respondent's disability rating of 65 percent permanent partial disability of the right arm and awarded future benefits of 130.46 weeks at $49 per week plus medical expenses, and plus some future medical expense.

The temporary total disability benefits and medical expense allowances are not in controversy.

The trial court awarded compensation for injury to the right arm based upon the schedule applicable to one arm. (K. S. A. 1969 Supp. 44-510d [13].)

The claimant contends compensation should have been computed on the basis of 50 percent permanent partial general disability pursuant to K. S. A. 1969 Supp. 44-510e, formerly the proviso in K. S. A. 44-510 (3) (c) (24).

The substance of the provisions of the workmen's compensation act material to the point here under consideration has not been changed by the legislature since 1963, although in the amending process the provisions were made more difficult to find in the 1969 Supplement. For clarification we shall therefore refer to the sections of K. S. A. 44-510 as they appeared in the statute book following the 1963 amendment. Reference will be made to the 1968 amendment as it appears in the 1969 Supplement which is applicable to this case.

K. S. A. 44-510 (3) (a) provides in part:

"Loss of both eyes, both hands, both arms, both feet, or both legs, or any combination thereof, shall, in the absence of proof to the contrary, constitute

a total permanent disability. . . . In all other cases total permanent disability shall be determined in accordance with the facts." (See K. S. A. 1969 Supp. 44-510c [a].)

The foregoing section was applied in *Honn v. Elliot,* 132 Kan. 454, 295 Pac. 719, where the claimant injured both feet *in one accident.* In the opinion the court pointed out that at no place in the schedule does it attempt to provide compensation for both members when they are in pairs as "both hands," "both feet," "both eyes," except as to loss of hearing in one or both ears. Since only permanent partial disability was sustained by the claimant the court said R. S. Supp. 1930, 44-510 (3) (c) (22) "provides the rule for computation for temporary or permanent partial disability not covered by schedule." (p. 458.)

The section of the workmen's compensation act covering injuries which result in disability, partial in character but permanent in quality, is K. S. A. 44-510 (3) (c). The provisions with which we are here concerned read:

"(c) Where disability, partial in character but permanent in quality, results from the injury, the injured workman shall be entitled to the compensation provided in paragraph 1 of this section, but shall not be entitled to any other or further compensation for or during the first week following the injury. Thereafter compensation shall be paid as provided in the following schedule, the average weekly wages to be computed as provided. . . ." (See K. S. A. 1969 Supp. 44-510d.)

"(13) 12 * For the loss of an arm, sixty percent (60%) of the average weekly wages during two hundred ten (210) weeks." (See K. S. A. 1969 Supp. 44-510d [13].)

"(21) 19 * Permanent loss of the use of a finger, thumb, hand, arm, . . . shall be equivalent to the loss thereof. For the permanent partial loss of the use of a finger, thumb, hand, arm, . . . compensation shall be paid at sixty percent (60%) of the average weekly wages, not in excess of . . . dollars . . . per week during that proportion of the number of weeks in the foregoing schedule provided for the loss of such finger, thumb, hand, arm, . . . which partial loss thereof bears to the total loss of a finger, thumb, hand, arm, . . .; but in no event shall the compensation payable hereunder for such partial loss exceed the compensation payable under the schedule for the total loss of such finger, thumb, hand, arm, . . . exclusive of the healing period." (See K. S. A. 1969 Supp. 44-510d [21].)

"(23) 21 * Whenever the workman is entitled to compensation for a specific injury under the foregoing schedule, the same shall be exclusive of all other compensation except the benefits provided in paragraph 1 of this section, and no additional compensation shall be allowable or payable for either temporary or permanent disability: . . ." (See K. S. A. 1969 Supp. 44-510d [23].)

"(24) 22 * . . . In case of temporary or permanent partial disability not covered by schedule the workman shall receive during such period of temporary or permanent partial disability not exceeding four hundred fifteen (415) weeks, sixty percent (60%) of the difference between the amount he was earning prior to said injury as in this act provided and the amount he is able to earn after such injury in employment, . . . " (See K. S. A. 1969 Supp. 44-510e.)

"(26) 24 * If a workman has suffered a previous disability and received a later injury, the effects of which together with the previous disability shall result in total permanent disability, then and in that event the compensation due said workman shall be the difference between the amount provided in the schedule of this section for his prior injury and the sum total which would be due said employee for such total disability. . . ." (See K. S. A. 1969 Supp. 44-510e.)

Both the examiner and the trial court applied subsection 13 and subsection 23 to determine the claimant's award of compensation. They concluded subsection 26 was not applicable to this case because the claimant became only partially disabled, and not totally disabled, after the second accident. Under such circumstances the injury and disability resulting from the accident with which we are here concerned fall within the provision for scheduled injuries, and subsection 23 is controlling to require benefits to be computed as a scheduled injury.

*Piper v. Kansas Turnpike Authority,* 202 Kan. 771, 451 P. 2d 152, and the authorities discussed therein clearly hold that where a workman has suffered a previous disability and received a later injury, the workman is entitled to compensation under subsection 26 only where the effects of the two injuries result in total permanent disability. (See, also, *Stevens v. Kelly-Carter Coal Co.,* 140 Kan. 441, 37 P. 2d 48.)

The claimant argues the trial court treated subsection 26 as a statute of limitation, whereas it extends the benefits where total permanent general disability is involved. The claimant calls our attention to the language above quoted from 44-510 (3) (a), *supra,* and contends the meaning of subsection 26 is determined by referring back to that language. He argues:

". . . In other words, all the workman needs to show under Paragraph 26, is to establish loss of specific members set out in the introductory paragraph of Section 3. For example, he does not need to show actual loss of earning power as in the ordinary case or any connection between the previous condition and the instant accident. All the workman needs to show is that the previous loss coupled with the instant one exists.

"If Paragraph 26, is not given that meaning, it becomes mere surplusage and of no value whatsoever.

"Since Paragraph 26, covers only total permanent type of injuries, we are obliged to look to another section of K. S. A. 63, 44-510, to see if a partial permanent disability is covered where the disability to one specific number [member] involved was caused by a prior incident. We feel *Paragraph 24, of 44-510,* above quoted, does that very thing. If Paragraph 24, is not given that meaning, it also becomes mere surplusage and of no value whatsoever."

We fail to see merit in the claimant's argument. The claimant relies on the proposition that the workmen's compensation act establishes no standard of health necessary to bring a workman under the act, and accidental injuries are compensable thereunder where the accident only serves to aggravate or accelerate an existing disease or intensifies the affliction, citing *Gilliland v. Cement Co.,* 104 Kan. 771, 180 Pac. 793; and *Johnson v. Skelly Oil Co.,* 181 Kan. 655, 312 P. 2d 1076.

These cases have no application where the benefits to which a workman is entitled under the act involve a scheduled injury. Other cases cited by the claimant do not support his contentions because the second injury when combined with the prior disability resulted in total permanent disability of the workman. The claimant relies upon *Honn v. Elliott,* supra, involving permanent partial disability, and criticizes *Piper v. Kansas Turnpike Authority,* supra, for not giving the reasoning in the *Honn* case adequate consideration in deciding the *Piper* case.

The provisions of the workmen's compensation act are clear and limit benefits in instances of partial disability to scheduled members of the body to the amount provided by the schedule. When a specific injury and disability is a scheduled injury under the workmen's compensation act, the benefits provided under the schedule are exclusive of any other compensation. (*Riggan v. Coleman Co.,* 166 Kan. 234, 200 P. 2nd 271; and *Wammack v. Root Manufacturing Co.,* 184 Kan. 367, 336 P. 2d 441.)

The court in *Wammack* discussed scheduled injuries, and held where the workman lost the permanent use of a thumb and also lost the permanent partial use of the other thumb, the provisions of the act did not limit recovery to a single thumb, but where the workman while engaged in the performance of his duties suffered injuries in an accident which resulted in the sustaining of separate and distinct injuries to both thumbs, he was entitled to compensation for each of the injuries so received as scheduled injuries. In the opinion the court distinguished *Honn v. Elliott,* supra.

On the facts in this case the injury and disability clearly fall within the rules relating to scheduled injuries, and since the second injury and disability did not result in total disability, the trial court properly awarded compensation under the schedule.

The judgment of the lower court is affirmed.